**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA LLC,<br><br>                 Plaintiff,<br><br>  v.<br><br>ZYXEL COMMUNICATIONS, INC. and ZYXEL COMMUNICATIONS CORPORATION,<br><br>                 Defendants. | C.A. No. 1:13-cv-02013-RGA<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT ZYXEL COMMUNICATIONS, INC.'S AMENDED COUNTERCLAIMS

ZyXEL hereby asserts the following amended counterclaims against TQ Delta:

## NATURE OF ACTION

1.      This is an action for TQ Delta's breach of its contractual commitments to the International Telecommunications Union ("ITU") and its members, affiliates and adopters.  TQ Delta breached of its contractual commitments by refusing to offer ZyXEL licenses of its United States Patent Nos. 8,090,008 ("the '008 patent"), 8,073,041 ("the '041 patent"), 7,292,627 ("the '627 patent"), 7,471,721 ("the '721 patent"), 8,218,610 ("the '610 patent"), 8,355,427 ("the '427 patent"), 7,453,881 ("the '881 patent"), 7,809,028 ("the '028 patent"), 7,978,706 ("the '706 patent"), 8,422,511 ("the '511 patent"), 7,796,705 ("the '705 patent"), 7,889,784 ("the '784 patent"), 7,835,430 ("the '430 patent"), 7,570,686 ("the '686 patent"), 8,238,412 ("the '412 patent"), 8,432,956 ("the '2,956 patent"), 7,451,379 ("the '379 patent"), 8,516,337 ("the '337 patent"), 7,979,778 ("the '778 patent"), 7,925,958 ("the '958 patent"), 8,462,835 ("the '835 patent"), 7,978,753 ("the '753 patent"), 6,445,730 ("the '730 patent"), 8,437,382 ("the '382 patent"), 7,836,381 ("the '381 patent"), 7,844,882 ("the '882 patent"), 8,276,048 ("the '048

patent"), 8,495,473 ("the '473 patent"), 7,831,890 ("the '890 patent"), 8,335,956 ("the '5,956 patent"), 8,468,411 ("the '411 patent"), and 8,407,546 ("the '546 patent") on fair and reasonable terms.  TQ Delta also breached these contracts by filing this patent infringement action seeking to enjoin sales of ZyXEL's products that operate in accordance with various DSL-related standards.

## PARTIES

2.	ZyXEL Communications, Inc. ("ZyXEL") is a corporation organized and existing under the laws of the State of California and has a place of business at 1130 North Miller Street, Anaheim, California 92806.

3.	Upon information and belief, TQ Delta, LLC ("TQ Delta") is a limited liability company organized and existing under the laws of the State of Delaware and having a principal place of business at 805 Las Cimas Parkway, Suite 240, Austin, Texas 78746.

## JURISDICTION AND VENUE

4.	This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 as ZyXEL's counterclaims are related to TQ Delta's claims of patent infringement.  This Court has jurisdiction over the state law claims discussed herein because ZyXEL's state law claims arise from a common nucleus of operative fact as the federal claims raised herein.

5.	TQ Delta has subjected itself to personal jurisdiction by suing ZyXEL within this District.  Personal jurisdiction is also proper because, on information and belief, TQ Delta is incorporated within the state of Delaware and because TQ Delta has its principal places of business within the state of Delaware.

6.	Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c) and 1400 (b).

**FACTUAL BACKGROUND**

A.     **TQ Delta's Asserted Patents and Related Standards.**

1.     In its Complaint, TQ Delta purports to be the owner of all rights, title, and interest in U.S. Patent Nos. '008 patent, '041 patent, '627 patent, '721 patent, '610 patent, '427 patent, '881 patent, '028 patent, '706 patent, '511 patent, '705 patent, '784 patent, '430 patent, '686 patent, '412 patent, '2,956 patent, '379 patent, '337 patent, '778 patent, '958 patent, '835 patent, '753 patent, '730 patent, '382 patent, '381 patent, '882 patent, '048 patent, '473 patent, '890 patent, '5,956 patent, '411 patent, and '546 patent, and asserts that ZyXEL has infringed the '008 patent, '041 patent, '627 patent, '721 patent, '610 patent, '427 patent, '881 patent, '028 patent, '706 patent, '511 patent, '705 patent, '784 patent, '430 patent, '686 patent, '412 patent, '2,956 patent, '379 patent, '337 patent, '778 patent, '958 patent, '835 patent, '753 patent, '730 patent, '382 patent, '381 patent, '882 patent, '048 patent, '473 patent, '890 patent, '5,956 patent, '411 patent, and '546 patent ("Asserted Patents"). TQ Delta alleges that its Asserted Patents relate to digital subscriber line ("DSL") technology, including, for example, asymmetric digital subscriber line ("ADSL") technology and very-high-bit-rate digital subscriber line ("VDSL") technology.

2.     TQ Delta alleges that ZyXEL, a manufacturer of customer premise equipment ("CPE") products that operate in accordance with various DSL-related standards ("DSL CPE Products") and central office equipment ("CO") products that operate in accordance with various DSL-related standards ("DSL CO Products"), infringe TQ Delta's Asserted Patents. The various DSL-related standards include ITU-T ADSL2 (G.992.3), ADSL2+ (G.992.5), ITU-T VDSL2 (G.993.2) standard, ITU-T G.bond standard (*e.g.*, G.998.1, G.998.2), and ITU-T G.inp (G.998.4) standard ("DSL Standards").

3. The purpose of international standards-setting organizations, such as the ITU, is to allow companies to come together and agree on ways to make their products interoperable. To do so, members work together to develop technical "standards" – agreed-upon protocols that create a common design for a technical function.  If a networking device manufacturer follows a given standard, any standard-compliant networking devices should successfully communicate with any other standard-compliant networking equipment utilized by the wireless carrier.  Only if each component follows the applicable standards will the components work seamlessly with each other.  Patents that are necessary to the proper functioning of the standard are known as "essential" patents.

4. TQ Delta has alleged that "the use of one or more patent claims in the [TQ Delta DSL patent] portfolio may be required to practice or otherwise comply with certain DSL-related Recommendations, Deliverables and/or standards.  TQ Delta is willing to negotiate a license with ZyXEL on a non-discriminatory basis on reasonable terms and conditions with respect to any such standard-essential patent claims."

5. TQ Delta, as a member of the ITU, has made contractual commitments to the ITU to license its allegedly essential patents on terms that are fair, reasonable, and non-discriminatory or reasonable and demonstrably free of unfair discrimination (collectively "FRAND").  The ITU's Common Patent Policy seeks from holders of allegedly essential patents declarations that they are prepared to grant licenses either "free of charge" or "on a non-discriminatory basis on reasonable terms and conditions."   Where a patent holder refuses to make such a declaration and indicates that it is not willing to license under FRAND terms, "the Recommendation / Deliverable shall not include provisions depending on the patent."

6. When a patentee voluntarily commits to allow manufacturers willing to take a license on FRAND terms to practice its allegedly essential patents under FRAND terms and conditions, it is agreeing to permit use of the allegedly essential patent on FRAND terms creates clear and legally enforceable contractual rights and obligations.

7. A patent holder who makes a written declaration to the ITU stating that it is prepared to grant licenses on FRAND terms makes a contractual commitment for the benefit of potential willing licensees, who are third-party beneficiaries to that commitment. A patent holder making such a declaration to the ITU becomes (i) contractually bound to the ITU; (ii) for the benefit of third party beneficiaries; (iii) to license its declared-essential patent on FRAND terms.

**B.    The Parties' Negotiation History.**

8. In June, 2013, TQ Delta first sent a letter to ZyXEL regarding TQ Delta's DSL patent portfolio. ZyXEL responded to TQ Delta expressing ZyXEL's interests in a license discussion.

9. In preparation for the license discussion between the parties, TQ Delta and ZyXEL began to negotiate a non-disclosure and confidentiality agreement ("NDA") and a standstill agreement in early October, 2013. During October and November, 2013, ZyXEL and TQ Delta exchanged emails about the scope of the NDA.

10. On November 25, 2013, ZyXEL received a package from TQ Delta demanding a response by November 29, 2013 regarding its final position on the NDA and standstill agreement. TQ Delta unilaterally set a four-day deadline over the Thanksgiving holidays for ZyXEL to provide its position. Ten days later, TQ Delta filed the Complaint.

11. Before TQ Delta filed this action, TQ Delta and ZyXEL were still in the process of finalizing the NDA and standstill agreement so that the parties could move forward with their license discussion.  TQ Delta has never provided ZyXEL with any financial term of any such license or any detail about TQ Delta's licensing scheme.

**C.     ZyXEL is a Willing Licensee.**

12. As discussed above, ZyXEL engaged in the NDA negotiation with TQ Delta for two months, in order to move forward with negotiating a license of TQ Delta's DSL patent portfolio.  ZyXEL is willing to take a license to TQ Delta's DSL patent portfolio on true FRAND terms.

**COUNTERCLAIM ONE**
**(Breach of Contract)**

13. ZyXEL incorporates Paragraphs 1 through 12 of these Amended Counterclaims, as though fully set forth herein.

14. TQ Delta entered into express or implied contractual communication with ITU and its members, affiliates and adopters relating to the DSL Standards.  TQ Delta's irrevocable undertakings to the ITU, and manufacturers of standard-compliant products, to permit use of its allegedly essential patents, including the Asserted Patents, by manufacturers like ZyXEL on FRAND terms created contractual agreements.

15. Each third party that would potentially implement the DSL-related technology was an intended beneficiary of those contracts.  Specifically, TQ Delta's undertakings to the ITU create binding and enforceable agreements that ZyXEL is entitled to enforce as either a party or a third-party beneficiary.

16.     TQ Delta was contractually obligated, among other things, to offer a license to its identified patents consistent with the applicable patent policy of the standards and bylaws of the ITU.

17.     TQ Delta breached its contractual commitments when it (i) failed to provide ZyXEL with a FRAND offer and to conclude a license on FRAND terms and conditions; (ii) failed to seek a determination of FRAND license terms and conditions from a competent court or tribunal; and (iii) prosecuted this infringement action seeking a permanent injunction.  In so doing, TQ Delta has also violated the implied covenant of good faith and fair dealing that adheres to every contract.

18.     TQ Delta again breached these contracts by filing patent infringement actions seeking to enjoin ZyXEL's implementation of the technology of the allegedly "essential" patents and to exclude ZyXEL from, among other things, importing or selling products that implement such technology.  To the extent this technology is actually necessary to implementation of the relevant standards, TQ Delta was obligated to offer licenses to ZyXEL on FRAND terms.

19.     As a result of TQ Delta's contractual breaches, ZyXEL has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

20.     ZyXEL will suffer irreparable injury by reason of the acts, practices, and conduct of TQ Delta alleged above until and unless the Court enjoins such acts, practices, and conduct. ZyXEL has no adequate remedy at law for TQ Delta's breach of its contractual obligations.

21.     Among other things, ZyXEL is entitled to a preliminary and permanent injunction prohibiting TQ Delta from enforcing its allegedly "essential" patents against ZyXEL, or from excluding ZyXEL from implementing the technology allegedly embodied in those patents.

22.     ZyXEL seeks an award of specific performance requiring TQ Delta to submit to ZyXEL a license offer that is capable of acceptance by ZyXEL for a license on FRAND terms and conditions determined by the Court for the Asserted Patents.

23.     In the event that the Court does not order TQ Delta to make ZyXEL an offer capable of acceptance for a license to the Asserted Patents on FRAND terms, ZyXEL seeks an award of specific performance requiring TQ Delta to submit to ZyXEL a license offer that is capable of acceptance by ZyXEL for a license on FRAND terms and conditions determined by the Court for TQ Delta's portfolio of United States patents that TQ Delta has alleged as essential to ITU standards.

### COUNTERCLAIM TWO
**(Declaratory Judgment that TQ Delta Must Offer ZyXEL a FRAND License Or That The Alleged "Essential" Patents Are Unenforceable As to ZyXEL)**

24.     ZyXEL incorporates the averments of Paragraphs 1 through 23 of these Amended Counterclaims, as though fully set forth herein.

25.     There is a dispute between the parties concerning whether TQ Delta has offered to license to ZyXEL patents consistent with the referenced policy of the standards and bylaws of the ITU.

26.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  In the alternative to Count I, ZyXEL seeks a declaratory judgment establishing the proper FRAND license terms and conditions for the Asserted Patents.

27.     There exists an actual, justiciable controversy between the parties.  ZyXEL is entitled to a declaratory judgment that TQ Delta has not offered license terms to ZyXEL on terms consistent with the referenced policy of the standards and bylaws of the ITU.

28.     ZyXEL is further entitled to a declaratory judgment that if TQ Delta refuses to offer a license on FRAND terms, the allegedly essential patents shall be unenforceable as to ZyXEL.

## PRAYER FOR RELIEF

Wherefore, ZyXEL respectfully requests that this Court enter judgment against TQ Delta as follows:

(a)     Adjudge and decree that TQ Delta is liable for breach of contract;

(b)     Decree that ZyXEL is entitled to license any and all patents that fall within TQ Delta's commitments to the ITU in relation to DSL-related technology, on a fair and non-discriminatory basis on reasonable terms and conditions;

(c)     Enjoin TQ Delta from further demanding excessive royalties from ZyXEL that are not consistent with TQ Delta's FRAND obligations, and from enforcing, or seeking to enforce, patent infringement claims in the ITC (or elsewhere) in breach of their FRAND obligations as alleged above;

(d)     Decree that if TQ Delta refuses to offer ZyXEL a license on a fair and non-discriminatory basis on reasonable terms and conditions, that TQ Delta's patents are unenforceable as to ZyXEL and its products;

(e)     Enter judgment against TQ Delta for the amount of damages that ZyXEL proves at trial;

(f)     Award ZyXEL its attorneys' fees, costs and expenses in this action; and

(g)     Award ZyXEL such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, ZyXEL demands a jury trial of all issues that may be tried to a jury.

Dated: March 17, 2014

| | |
|---|---|
| | */s/ Kenneth L. Dorsney* |
| *Of Counsel:* | Kenneth L. Dorsney (Bar No. 3726) |
| | MORRIS JAMES LLP |
| Yitai Hu (admitted *pro hac vice*) | 500 Delaware Avenue, Suite 1500 |
| Elizabeth H. Rader (admitted *pro hac vice*) | Wilmington, Delaware 19801 |
| Tsai-Yu (April) Chen (admitted *pro hac vice*) | (302) 888-6800 |
| ALSTON + BIRD LLP | kdorsney@morrisjames.com |
| 275 Middlefield Road, Suite 150 | |
| Menlo Park, California 94025-4004 | Attorneys for Defendant ZYXEL |
| (650) 838-2008 | COMMUNICATIONS, INC. |
| yitai.hu@alston.com | |
| elizabeth.rader@alston.com | |
| april.chen@alston.com | |