**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA LLC,<br><br>               Plaintiffs,<br><br>   v.<br><br>ZYXEL COMMUNICATIONS, INC., and<br>ZYXEL COMMUNICATIONS<br>CORPORATION,<br><br>               Defendants. | C.A. No. 13-2013 (RGA)<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF TQ DELTA'S MOTION TO DISMISS
THE AMENDED COUNTERCLAIMS OF DEFENDANTS ZYXEL
COMMUNICATIONS, INC. AND THE COUNTERCLAIMS
OF ZYXEL COMMUNICATIONS CORPORATION**

Kenneth L. Dorsney (Bar No. 3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com

*Of Counsel:*

Yitai Hu (admitted *pro hac vice*)
Elizabeth H. Rader (admitted *pro hac vice*)
Tsai-Yu (April) Chen (admitted *pro hac vice*)
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, California  94025-4004
(650) 838-2008
yitai.hu@alston.com
elizabeth.rader@alston.com
april.chen@alston.com

*Attorneys For Defendant
ZyXEL Communications, Inc.
ZyXEL Communications Corporation*

Dated: May 1, 2014

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF ARGUMENT ....................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................ 3

IV. ARGUMENT ................................................................................................................. 4

      A.      TQD's Motion To Dismiss Is Actually A Premature And Insufficient
            Motion For Summary Judgment ............................................................................. 4

      B.      ZyXEL's Counterclaim I States A Claim For Breach Of Contract
            Because It Is UnDisputed That TQD/Aware Submitted Patent Declarations
            To The ITU That Obligate TQD To Grant A License On FRAUD Terms
            To Applicants Who Implement The Relevant ITU Standards ............................... 5

      C.      ZyXEL's Counterclaim For Breach Of Contract States A Claim Because
            TQD is Not Suing an "Unwilling Licensee" Infringer ........................................ 11

      D.      The Court Can Exercise Subject Matter Jurisdiction Over ZyXEL's
            Counterclaim for Declaratory Judgment Because It States A Justiciable
            Controversy ......................................................................................................... 13

            1.      The Legal Standard for a Justiciable Controversy .................................... 13

            2.      A Substantial Controversy Between Adverse Parties Exists .................... 14

            3.      The Requested Declaratory Judgment of FRAUD Terms Would Be
                 Conclusive With Respect to Any Standard-Essential Patents ................. 18

            4.      The Requested Declaratory Judgments Would Be Useful Because
                 They Will Resolve the Central Dispute Between the Parties ................... 19

V. CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Apple Inc. v. Motorola Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ..........................................................................7

*Apple Inc. v. Motorola Mobility, Inc.*,
  2012 U.S. Dist. LEXIS 181854 (W.D. Wisc. Oct. 29, 2012) .................................12

*Apple Inc. v. Motorola Inc.*,
  No. 2012-1548-1549 Slip. Op. at 73 (Fed. Cir. April 25, 2014)..............................7

*Apple Inc. v. Motorola Mobility, Inc.*,
  2011 WL 7324582 *7-11, Case No. 11-cv-178-bbc, (W.D. Wisc. 2011) ....................8, 11, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................5

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).................................................................................................14

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...................................................................................7, 13, 18

*Ericsson Inc. v. D-Link Systems, Inc.*,
  No. 6:10-cv-473, 2013 U.S. Dist. LEXIS 110585 (D.I. No. 27 at 11) ...................10

*Ericsson Inc. v. Samsung Elecs. Co. Ltd.*,
  207 WL 1202728, *2, No. 2:06-cv-63 (E.D. Tex. April 20, 2007) ........................17

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)....................................................................................5

*IGI Labs. Inc. v. Mallinckrodt LLC*,
  2014 WL 1652790, *2 ..............................................................................................9

*In re Innovatio IP Ventures, LLC Patent Litig.*,
  921 F. Supp. 2d 903 (N.D. Ill. 2013) .................................................................8, 10

*International Bhd. Of Boilermakers v. Kelly*,
  815 F.3d 912 (3d Cir. 1987)....................................................................................14

*MedImmune v. Genentech, Inc.*,
  549 U.S. 118 (2007)................................................................................................14

*Micron Tech., Inc. v. Mosaid Techs.*, *Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) ................................................................................ 14

*Microsoft Corp. v. Datatern, Inc.*,
  2014 WL 1327923, *4, Case Nos. 2013-1184, 2013-1185 (Fed. Cir. Apr. 4, 2014) ........ 14, 15

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ........................................................................... 5, 6, 7

*Microsoft Corp. v. Motorola, Inc.*,
  854 F. Supp. 2d 993 (W.D. Wash. 2012) .............................................................. 11

*Microsoft Corp. v. Motorola, Inc.*,
  864 F. Supp. 2d 1023 (W.D. Wash. 2012) ......................................................... 6, 8, 9

*Nokia Corp. and Nokia Inc. v. Qualcomm, Inc.*,
  2006 WL 2521328, No. Civ. A 06-509-JJF (D. Del. 2006) ............................................. 16, 17

*Realtek Semiconductor Corp. v. LSI Corp.*,
  2012 WL 4845628, No. C-12-03451 RMW, No. 41, (N.D. Cal. October 10, 2012) .... 8, 15, 17

*Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings Inc.*,
  5745-VGS, 2010 WL 5276991, *6 (Del. Ch. Dec. 17, 2010) ................................................... 5

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
  912 F.2d 643 (3d Cir. 1990) ........................................................................... 14, 18, 19

*Surrick v. Killion*,
  449 F.3d 520 (3d Cir. 2006) .............................................................................. 14

STATUTES

28 U.S.C. § 2201(a) ................................................................................................ 3, 13

OTHER AUTHORITIES

Federal Rules of Civil Procedure 12(b)(6) ................................................................ 9, 12

## I.      INTRODUCTION

Aware, Inc., the original owner of the asserted patents and the predecessor to the plaintiff TQD Delta LLC ("TQD"), declared to the International Telecommunications Union ("ITU") that its patents would be required to implement certain ITU standards.  Aware, Inc. also committed to license implementers on a worldwide, nondiscriminatory basis and on reasonable terms and conditions ("F/RAND").  Now that the standards have been adopted and implemented, however, TQD seeks to avoid its binding commitments by suing product manufactures without engaging in any good-faith negotiations and seeking unreasonable royalties using the threat of damages and injunctions as leverage.

TQD's Motion to Dismiss is deficient in a number of ways.  First, TQD's Motion is not a motion to dismiss, but is instead a motion for summary judgment.  TQD's attack on ZyXEL's facially sufficient pleadings centers primarily upon its incorrect interpretation of the patent policies of the ITU and the past actions of the parties to this lawsuit.  The "evidence" that TQD attempts to marshal in support of its Motion consists exclusively of documents attached to the declaration of one of TQD's attorneys.  Summary judgment on the factual issues surrounding this complex defense would be premature at this early stage.

In addition to the procedural flaws in TQD's Motion, the substantive shortcomings also necessitate its denial.  In particular, the motion appears to be a thinly veiled attempt to force ZyXEL, to surrender its defenses on two major issues—including whether the asserted patent claims are standard-essential and whether ZyXEL's products practice the patent claims, before the asserted claims are even construed.  This attempt must fail.  If TQD's Motion is properly characterized as a motion to dismiss, the Court must accept as true all well-pleaded facts in ZyXEL's Counterclaim.  Every court that has considered the issue of whether a patentee's

declarations to a standards-setting entity like the ITU create valid contracts has held that they do so and that these contracts are enforceable by suppliers of standard-compliant products. Likewise, courts have frequently held that suppliers of standard-compliant products can bring claims for declaratory judgment like ZyXEL's, without being required to first concede that their products are covered by the patents, that the patents are standard-essential or that the patents are not invalid. Courts have also held that disputes over appropriate F/RAND terms support subject matter jurisdiction for claims seeking a declaratory judgment determining those terms. Indeed, TQD has not cited any case in which a court dismissed, at the pleading stage, a supplier's claim for declaratory judgment asking the court to determine F/RAND terms for a license to standard-essential patents.

## II.    SUMMARY OF ARGUMENT

1.      TQD's Motion is predicated upon its view of the facts surrounding the applicable ITU patent policies, the facts surrounding its licensing commitments, and the facts surrounding ZyXEL's willingness to license the asserted patents. In order to support its factual assertions, TQD appends documents outside the four corners of ZyXEL's counterclaims, and makes unsupported arguments regarding the licensing negotiations between the parties. TQD also admits that the documents it attaches do not constitute the entire universe of relevant documents, and asks instead that the Court accept that these documents are "representative of all such Patent Declarations submitted by TQD/Aware." Opening Br. (D.I. No. 19) at 6. As a result, TQD's Motion is not just a motion for summary judgment, but an incomplete and insufficient one.

2.      ZyXEL has stated a claim for TQD's breach of its Agreement with the ITU because it pleaded facts showing that TQD's predecessor declared its patents to be standard-essential and agreed to license to license standard-compliant manufacturers on FRAND terms.

2

ZyXEL also pled facts showing ZyXEL's willingness to negotiate a license, including negotiating concerning a standstill agreement and a nondisclosure agreement.  ZyXEL has alleged that, while the parties were still negotiating those related agreements, TQD breached its agreements when it abruptly ended the negotiations by filing this lawsuit.

3.       ZyXEL has stated a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) because it has pleaded facts showing that a substantial controversy exists about whether ZyXEL is entitled to a license on the asserted patents on FRAND terms and, if so what those terms are, and asked the court to declare its rights.  The parties' interests are adverse and ZyXEL would risk serious harm if the court does not consider the issues.  The requested judgment would be conclusive with respect to any standard-essential patents and it would useful to both parties and resolve the substantial controversy.

## III.    STATEMENT OF FACTS

TQD alleges that ZyXEL, a manufacturer of customer premise equipment ("CPE") products that operate in accordance with various DSL-related standards and central office products ("CO") that operate in accordance with various DSL-related standards infringes TQD's thirty-two asserted patents.  D.I. No. 18 at ¶ 2.  The purpose of international standards-setting organizations, such as the ITU, is to allow companies to come together and agree on ways to make their products interoperable.  To do so, members work together to develop technical "standards" – agreed-upon protocols that create a common design for a technical function. Patents that are necessary to the proper functioning of the standard are known as "essential" patents.  D.I. No. 18 at ¶ 3.  The ITU's Common Patent Policy seeks from holders of allegedly essential patents declarations that they are prepared to grant licenses either "free of charge" or "on a non-discriminatory basis on reasonable terms and conditions."  D.I. No. 18 at ¶ 5.  Here,

TQD, as a member of the ITU, made contractual commitments to the ITU to license its allegedly essential patents on terms that are fair, reasonable and nondiscriminatory or reasonable and demonstrably free of unfair discrimination ("FRAND").  D.I. No. 18 at ¶ 5.

In June, 2013, TQD first sent a letter to ZyXEL regarding TQD's DSL patent portfolio.  It is undisputed that ZyXEL responded to TQD expressing ZyXEL's interest in a license discussion.  D.I. No. 18 at ¶ 8.  In preparation for a license discussion between the parties, TQD and ZyXEL began to negotiate a non-disclosure and confidentiality agreement ("NDA") and a standstill agreement in early October, 2013.  During October and November, 2013, ZyXEL and TQD exchanged emails about the scope of the NDA.  *Id.* at ¶ 9.  On November 4, 2013, TQD filed lawsuits against Pace PCC and 2WIRE, Inc. Technologies (Case No. 13-cv-1835 RGA) and Zhone Technologies, Inc. (Case No. 13-cv-1836-RGA).  On November 25, 2013, ZyXEL received a package from TQD demanding a response by November 29, 2013 regarding its final position on the NDA and standstill agreement.  TQD unilaterally set a four-day deadline over the Thanksgiving holidays for ZyXEL to provide its position.  D.I. No. 1 at ¶ 17; D.I. No. 18 at ¶ 10.  Ten days later, TQD filed the Complaint against ZyXEL.  D.I. No. 1.

IV.    ARGUMENT

A.    **TQD's Motion To Dismiss Is Actually A Premature And Insufficient Motion For Summary Judgment**

TQD's argument that ZyXEL failed to state a claim for relief is based upon its factual assertions regarding TQD's and ZyXEL's competing obligations imposed by the relevant ITU policies.  TQD's Motion is replete with references to – and reliance upon – documents attached to the Declaration of Paul McAndrews.  TQD attempts to sidestep this failing by stating in a footnote that "[b]ecause ZyXEL's pleading relies exclusively on such agreements and patent policies, the Court should consider these documents in ruling on this Motion to Dismiss, despite

4

that they are outside the four corners of ZyXEL's Counterclaims." Opening Br. (D.I. No. 19) at 6, fn. 3. Thus, TQD admits that its Motion relies upon matters extraneous to the pleadings.

Even assuming that TQD's position that documents outside the four corners of the pleading may be considered is correct, TQD admits that it did not provide the Court with the entire universe of documents that it believes necessary to resolve this factual dispute. Specifically, TQD makes the bare assertion that the documents it attached to its Motion "are representative of all such Patent Declarations submitted by TQD/Aware." Opening Br. (D.I. No. 19) at 6. Thus, the factual underpinnings of TQD's Motion are predicated not just upon documents outside the four corners of the pleadings, but also rely upon unspecified, additional documents outside the pleadings. It would be improper to decide this motion without accepting all ZyXEL's well-pleaded allegations as true.

**B.      ZyXEL's Counterclaim I States A Claim For Breach Of Contract Because It Is Undisputed That TQD/Aware Submitted Patent Declarations To The ITU That Obligate TQD To Grant A License On FRAND Terms To Applicants Who Implement The Relevant ITU Standards.**

In considering a motion to dismiss a claim for failure to state a claim on which relief can be granted, a court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11, citing *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009). Second, the court must then determine whether the facts alleged in the complaint are sufficient to show that the pleader has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. Forming a contract requires an offer, its acceptance and consideration. *Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings Inc*., 5745-VGS, 2010 WL 5276991, *6 (Del. Ch. Dec. 17, 2010). Here, the ITU's Common Patent Policy provides that "a patent embodied fully or partly in a [standard] must be accessible to everyone without undue constraints." *Microsoft*

*Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012) (affirming district court's grant of a preliminary injunction prohibiting Motorola from enforcing any injunctive relief in a related German action). When it promulgates a proposed standard ("recommendation"), anyone who owns a patent declared essential to an ITU standard must submit a declaration to the ITU stating whether it is willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions." *Id.* The ITU asks the patent holder to indicate on a form whether it (1) will grant a license free of charge; (2) will grant a license on RAND terms; or (3) is unwilling to grant licenses on either options 1 or 2. *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1028, 1031-32, (W.D. Wash. 2012) citing ITU Policy at 9-12. If a patent owner is unwilling to license suppliers on such terms, the ITU policy is not to include provisions depending on the patent." *Microsoft Corp.*, 696 F.3d at 876; (D.I. No. 18, at ¶ 5). The ITU's requests to patent holders "constitute offers to the patent holder to indicate their intentions with regard to essential patents" so that "the ITU may choose whether to incorporate the patented technology into a standard." *Microsoft v. Motorola*, 864 F. Supp. 2d at 1032. The ITU will not incorporate patent technology into a standard unless it can obtain a declaration from the patent holder agreeing to license either free of charge or on RAND terms. *Id.* A patentee's declarations to the ITU agreeing to license on RAND terms constitute acceptances of the ITU's offer for purposes of contract formation. *Id.*

The requisite consideration for contract formation is that the standard setting organization promised to include or consider including the patent holder's technology in the standard in exchange for the patent holder's promise to license its essential patents on RAND terms. *Id.* Affirming the district court's grant of a preliminary injunction, the Ninth Circuit held that "district court's conclusions that Motorola's RAND declarations to the ITU created a contract

enforceable by Microsoft as a third party beneficiary… and that this contract governs in some way what actions Motorola may take to enforce its ITU standard-essential patents…were not legally erroneous." *Microsoft v. Motorola*, 696 F.3d 872, 884. *See also Apple Inc. v. Motorola Inc.*, 869 F. Supp. 2d 901, 914 (N.D. Ill. 2012),  aff'd- in-part, rev'd-in-part and remanded, *Apple Inc. v. Motorola Inc.*, No. 2012-1548-1549 Slip. Op. at 73 (Fed. Cir. April 25, 2014). "Motorola agreed to license its standard-essential patents on FRAND terms as a *quid pro quo* for their being declared essential to the standard"). The Federal Circuit last week issued its decision in the parties' cross appeals, among other things, affirming the district court's grant of summary judgment that, on the record before the court, Motorola was not entitled to an injunction, applying the factors set out in *eBay v. MercExchange*, including that the patent was standard-essential and that Motorola had made FRAND commitments. *Apple Inc. v. Motorola Inc.*, No. 2012-1548-1549 Slip. Op. at 73 (Fed. Cir. April 25, 2014) citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, ZyXEL has alleged that TQD, as a member of the ITU, made contractual commitments to license its allegedly essential patents on FRAND or RAND terms by making written declarations to the ITU stating that it agrees to license willing licensees. (See D.I. No. 18, ¶¶ 5-6). TQD does not dispute that it entered into such commitments. ZyXEL has alleged that TQD "breached these commitments when it failed to provide ZyXEL with a FRAND offer and to conclude a license on FRAND terms and conditions; ii failed to seek a determination of FRAND terms and conditions from a competent court or tribunal; and iii prosecuted this infringement action seeking a permanent injunction. *See id*., ¶ 17).

Federal courts have repeatedly denied motions like TQD's to dismiss claims for breach of commitments to standard-setting bodies to license standard-compliant suppliers on F/RAND

terms.  *See Apple Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582 *7-11, Case No. 11-cv-178-

bbc, (W.D. Wisc. 2011) (denying motion to dismiss breach of contract claims); *Realtek*

*Semiconductor Corp. v. LSI Corp.*, 2012 WL 4845628, No. C-12-03451 RMW, No. 41, (N.D.

Cal. October 10, 2012), (denying motion to dismiss breach of contract claims); *In re Innovatio IP*

*Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 924 (N.D. Ill. 2013) (denying motions to

dismiss breach of contract claims based on lack of standing or condition precedent).

 A supplier of standard-compliant products or services, or potential user of the relevant

ITU standard, is a third party beneficiary to an agreement between a patentee and the ITU.

*Microsoft Corp. v. Motorola*, 864 F. Supp. 2d at 1032.  The *Innovatio* court reached the same

conclusion applying Illinois law and the Restatement (Second) of Contracts.  *In re Innovatio*, 921

F. Supp. 2d at 923 ("Innovatio's predecessors made a contractual promise to Cisco to offer

licenses on RAND terms to all users of the relevant IEEE standards.  If Innovatio fails to perform

that obligation to any of those users, Cisco can sue Innovatio to recover all foreseeable damages

it suffers because of that breach.").

 TQD argues that ZyXEL's counterclaims are based on an incorrect premise that TQD

was obligated to provide it with a FRAND offer, even in the absence of good-faith negotiation

by ZyXEL.  Mot. at 10.  This mischaracterizes ZyXEL's well-pleaded allegations and its theory

for breach.  ZyXEL has alleged that, upon learning of TQD's claims that its patents covered

ZyXEL's implementations of various ITU standards, ZyXEL responded to TQD expressing its

interest in a license discussion.  D.I. No. 19 at 46, ¶ 8.  ZyXEL Taiwan engaged in the NDA

negotiation with TQD for two months, in order to move forward with negotiating a license of

TQD's patent portfolio.  *Id.*, 47, ¶ 12.  All of ZyXEL's conduct alleged illustrates its willingness

to take a license to TQD's patent portfolio on true FRAND terms to the extent that its products

implement the standards and the asserted patents cover the standards.  Taking all well-pleaded allegations in the counterclaims as true, the negotiations only ceased because TQD abruptly filed this action.

TQD seems to argue that ZyXEL had to take some unidentified, additional action beyond those alleged in the ZyXEL counterclaims to "apply" and become an "applicant" entitled to RAND terms.  Opening Br. at 11.  In so arguing, TQD is essentially arguing for judgment on the pleadings and asking the Court to construe the relevant provisions of the ITU declarations and agreements.  This is not appropriate in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See IGI Labs. Inc. v. Mallinckrodt LLC*, 2014 WL 1652790, *2 (denying motion to dismiss counterclaims because, without context, deciding whether a patented method was FDA approved and whether three drug-effects were different indications was inappropriate at the motion to dismiss stage).

In *Microsoft v. Motorola*, the court considered the same argument TQD makes here, that the ITC standard-compliant supplier must plead that it "applied" for a license and negotiated in good faith for a license in order for the patentee to have RAND obligations toward a supplier— and rejected it outright.  864 F. Supp. 2d 1023, 1034-1036 (W.D. Wash. 2012).  First, the Microsoft court found no words in Motorola's declarations to the ITU (essentially the same TQD's) suggesting that its intent to be bound was conditional.  "Without any such words, the court is disinclined to find that either applying for a license or negotiating in good faith are conditions precedent."  *Id.* at 1034.  The court also reasoned that if a patentee's commitment to grant licenses on RAND terms turned on whether the implementer first applies for a license, the patentee could demand exorbitant licensing fees from implementers of the standard that had not yet applied for a license, contrary to the purpose of the patentee's commitment to the ITU, which

is to ensure that standard-essential patents are available to all implementers on RAND terms.  *Id.*

Similarly, the court reasoned " a finding that negotiating in good faith is a condition precedent to

Motorola's RAND obligations to the implementer would run contrary to the purpose of

Motorola's commitments" to the ITU.  *Id.* at 1035.  Likewise, the *Innovatio* court rejected an

argument that manufacturers' "breach of contract claim fails because it fails to allege that the

Manufacturers triggered the RAND obligation by requesting a license from Innovatio."  *In re*

*Innovatio*, 921 F. Supp. 2d at 924 ("…there is no basis for concluding that the Manufacturers

were required to request a RAND license before bringing a contract claim for Innovatio's failure

to offer one.").

TQD's reliance on *Ericsson Inc. v. D-Link Systems*, *Inc.*, No. 6:10-cv-473, 2013 U.S.

Dist. LEXIS 110585 (D.I. No. 27 at 11) is misplaced.  First, in that case Intel did not even assert

a claim for breach of contract.  After a jury trial, Intel and other defendants moved, among other

things, for judgment as a matter of law on Ericsson's damages claims.  2013 U.S. Dist. LEXIS at

*7.  Defendants contended that the damages award was inconsistent with Ericsson's RAND

obligations.  *Id.* at *57.  Second, on the specific record before it, including evidence elicited at

trial, the court denied defendants' "motion for judgment as a matter of law that Ericsson

breached its RAND obligation by not seeking damages against Intel."  *Id.* at *58-59.  Nothing in

the *Ericsson* case supports TQD's position.  Indeed, contrary to TQD's assertion that *Ericsson*

supports dismissal of ZyXEL's counterclaims, the *Ericsson* court found that "the paradox of

RAND licensing" creates "a situation ripe for judicial resolution."  *Id.* at *86-87.  "If two parties

negotiating a RAND license are unable to agree to the financial terms of an agreement, it is

entirely appropriate to resolve their dispute in court."  *Id.*, *citing Microsoft Corp. v. Motorola,*

*Inc.*, 854 F. Supp. 2d 993, 1001-02 (W.D. Wash. 2012).

Here, TQD, after negotiating over an NDA and standstill agreement for the purpose of moving forward with license negotiations, abruptly abandoned the negotiations and filed this action. The minimal record of the parties' respective pleadings to date contradicts TQD's argument that ZyXEL "chose the path" of avoiding applying for a license to avoid undercutting its potential noninfringement and invalidity defenses. It is TQD, not ZyXEL, that has refused to participate in the RAND negotiation process by filing this action while ZyXEL was still negotiating preliminary agreements to support the negotiation over rates and terms.

### C.    ZyXEL's Counterclaim For Breach of Contract States A Claim Because TQD is Not Suing an "Unwilling Licensee" Infringer.

As in its first argument, TQD mischaracterizes ZyXEL's breach of contract claim. TQD asserts that ZyXEL's counterclaims are "based on the incorrect assumption that TQD is precluded from seeking an injunction against an unwilling licensee." Motion at 12. ZyXEL has alleged that it was a *willing* licensee, assuming the parties were able to negotiate a license on FRAND terms. TQD's discussion of the Court's rulings in *Apple Inc. v. Motorola Mobility* (Opening Br. at 12-13) is misleading. That case originated when Motorola Mobility initiated an ITC Investigation against Apple alleging infringement of patents and seeking an exclusion order. *Apple v. Motorola Mobility Inc.*, 2011 WL 7324582, *1 (W.D. Wisc. June 7, 2011). Apple raised Motorola's FRAND obligations as an affirmative defense in the ITC and also filed an action against Motorola in the District of Wisconsin. *Id.*, *3. Importantly, two related cases between the parties were pending in the district court. *Id.* In the case relied on by TQD, Apple contended that "Motorola's refusal to negotiate a license in good faith with Apple for those declared-essential patents constitutes a breach of commitments Motorola made to several standards setting organizations to license essential patents on fair, reasonable and non-discriminatory terms." 2011 WL 7324582, *4. Apple also pleaded other causes of action,

including three claims for declaratory judgment. *Id.* Motorola then moved to dismiss Apple's causes of action, arguing, just as TQD has, that its obligation to grant Apple a license would only be triggered if there were an agreement between the parties or a determination that Motorola's patents are essential to standards that Apple is implementing in its products. *Id.* at *4-5. At the pleading stage, the district court denied all of Motorola's motions to dismiss under Fed. R. Civ. P 12(b)(6) except one concerning waiver. *Id.* at *14 (waiver) and *18 (summarizing decisions). With respect to Apple's claims for breach of Motorola's FRAND commitments, applying Wisconsin law, the court concluded that Apple had adequately pleaded breach of an enforceable obligation and therefore denied Motorola's motion to dismiss Apple's breach of contact claims. *Id.* at *8-*11.

The language which TQD describes as addressing "whether an owner of a standard essential patent may seek to enjoin an infringer that refuses to negotiate in good faith" (Motion at 12) is found in the Wisconsin court's decision of the parties' respective motions in limine, approximately one week before trial was to commence. *Apple Inc. v. Motorola Mobility, Inc.*, 2012 U.S. Dist. LEXIS 181854 (W.D. Wisc. Oct. 29, 2012). In separate motions, both parties "sought clarification about what constitutes a "breach" of Motorola's contracts with ETSI and IEEE. The issue before the Wisconsin district court was very fact-specific: whether, applying Wisconsin contract law, and considering the policies of ETSI and IEEE, Motorola's written agreements with those bodies could be breached by filing a suit seeking injunctive relief. *See id.* at *43. Although TQD's brief implies that the court ruled that a patent owner cannot breach an agreement with a standard-setting organization by enforcing its patents and seeking an injunction, it did not do so. The court actually *denied* both parties motions' in limine on the issue of whether suing and seeking an injunction violated Motorola's contracts with ETSI and

IEEE:

> I will also deny Motorola's motion in limine on this issue.  Motorola suggests…that there is no situation in which it could have breached its contracts by filing suit.  However, Motorola does not respond to Apple's argument that the contracts require Motorola to first offer a license to Apple on fair, reasonable and nondiscriminatory grounds before filing suit.  Because this argument was not addressed fully by either party, I cannot resolve it at this point.

*Id.* at *46.  The Federal Court's decision reviewing Judge Posner's decision dismissing Apple's action against Motorola in Illinois concludes that whether holders of standard essential patents can obtain an injunction depends on the balance of the *eBay* factors in the specific case.  *Apple Inc.*, Slip. Op. at 73.  Therefore, TQD's second argument, relying on a mischaracterization of ZyXEL's claim for breach of contract, and misleading argument must be rejected.

### D.   The Court Can Exercise Subject Matter Jurisdiction Over ZyXEL's Counterclaim for Declaratory Judgment Because It States A Justiciable Controversy.

#### 1.   The Legal Standard for a Justiciable Controversy.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Article II, Section 2 of the United States Constitution limits federal jurisdiction to actual "cases" and controversies, thus prohibiting "advisory" opinions.  An action must present "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution."  *International Bhd. Of Boilermakers v. Kelly*, 815 F.3d 912, 915 (3d Cir. 1987); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05 (1983).

In the declaratory judgment context, the Third Circuit has refined this test because of the

difficulty of defining ripeness in actions before an "accomplished" injury is established. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). The *Step-Saver* test focusses on the "adversity of interests" between the parties, the "conclusivity" that a declaratory judgment would have on the legal relationship between the parties, and the "practical help, or utility" of a declaratory judgment. *Id.* Similarly, the Supreme Court has held that the threshold question for the existence of subject matter jurisdiction for a declaratory judgment suit is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" the issuance of a declaratory judgment. *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). *See also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008); *Microsoft Corp. v. Datatern, Inc.*, 2014 WL 1327923, *4, Case Nos. 2013-1184, 2013-1185 (Fed. Cir. Apr. 4, 2014). The *Micron* opinion observes that the standard for substantial controversy articulated in *MedImmune* is more lenient than the test it replaced. 518 F. 3d at 900-902. The facts alleged in ZyXEL's Second Counterclaim show a substantial controversy under the *MedImmune* standard.

### 2.      A Substantial Controversy Between Adverse Parties Exists.

Adversity of interest to support subject matter jurisdiction over a declaratory judgment claim exists where a claimant faces a substantial threat of a real harm. *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006). ZyXEL's allegations show that there is an ongoing and concrete dispute over what would constitute FRAND license terms for patents TQD has identified as standards-essential and alleged to be infringed by products that implement the respective standards. Although the parties' license negotiations ended as a result of TQD abruptly and arbitrarily abandoning ongoing discussions in favor of filing this action, the Complaint itself

14

shows that this is not an abstract disagreement.  TQD seeks, in each of its thirty-two counts of patent infringement, "monetary relief to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court."  *E.g.* D.I. No. 1, ¶ 25.  TQD also alleges that ZyXEL has infringed by selling DSL CPE and DSL CO products to ISPs and their customers.  *Id.*, ¶¶ 23, 24. In the *Datatern* case, the Federal Circuit found that a substantial controversy existed between adverse parties based on the patentees' suing the suppliers' customers and contending that use of the suppliers' software met the claim limitations of the patents.  *See also Realtek v. LSI Corp.*, 2012 WL 4845628, *5 (rejecting the "adversary opinion" argument and concluding "Realtek can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity even through those facts may ultimately obviate the need for a license.")

The potential for harm is also clear.  If TQD succeeds in proving that any of ZyXEL's products infringe any of its patents, it will seek the highest royalties it can justify, based on its Incorrect position in that ZyXEL is not a beneficiary of its agreement with the ITU because ZyXEL is not an "applicant."  (Opening Br. at 9-12.)  If ZyXEL were licensed on FRAND terms, obviously its sales of licensed products to ISPs could not induce infringement or contributorily infringe.   Thus, the harm to ZyXEL could be the difference between a reasonable royalty rate determined by a jury, and a "*fair*, reasonable *and non-discriminatory"* royalty rate applied to the royalty base determined by the jury.  The *Realtek* court found it plausible that "once the patentee interposes the threat of an injunction, the standard-implementer is placed at a bargaining disadvantage in private negotiations such that the determination of a true RAND rate almost necessarily must be conducted by a court."  *Realtek Semiconductor Corp.*, 2012 WL 4845628, No. C-12-03451 RMW, (N.D. Cal., 2012), at 7-8.

TQD argues that "in order for such a justiciable controversy to exist, the alleged infringer must be willing to accept a license on the adjudicated terms" and that otherwise, such an adjudication would be merely an advisory opinion.  Opening Br. (D.I. at 15).  But most courts that have considered this argument have rejected it.  A court in this district has determined, albeit in another context, that it is not necessary to determine if patents are "essential" to a standard, in order to interpret the terms of the parties' contractual obligations regarding the licensing of essential patents.  *Nokia Corp. and Nokia Inc. v. Qualcomm, Inc.*, 2006 WL 2521328, No. Civ. A 06-509-JJF (D. Del. 2006).  In that case, Nokia filed suit in the Court of Chancery in the State of Delaware seeking declaratory relief and specific performance to enforce terms of the alleged contracts.  *Id.*, *1.  The defendant patentee filed a Notice of Removal contending that patent law was a necessary element of the plaintiffs' claims.  Recognizing that some breach of contract claims do require application of patent law and a "fact intensive and technical inquiry" the court, however, determined that "it is not necessary, as Defendant contends, to determine whether the patents at issue are in fact "essential" because Defendant has already voluntarily declared them essential."  *Id.*  "For Defendant to now contend Plaintiffs' claims cannot be resolved without determining whether the patents at issue are essential seems incongruent with Defendants' own declarations to the ETSI."  *Id.*, *2.  The court therefore determined that resolution of Nokia's claims for declaratory relief and specific performance depended on interpretation of the terms of the licensing agreement rather than interpretation of the patents, and granted the plaintiff's motion to remand.  *Id.*

Another court tasked with managing a case where both parties asserted counterclaims for breach of the other's F/RAND obligations relied on the *Nokia v. Qualcomm* court's decision to grant a motion for separate trials of the contract claims.  *Ericsson Inc. v. Samsung Elecs. Co.*

16

*Ltd.*, 207 WL 1202728, *2, No. 2:06-cv-63 (E.D. Tex. April 20, 2007). "If a FRAND dispute, standing alone, implicates no substantial question of patent law, it is difficult to understand how the issues in such a case could not be separated from the issues in a patent infringement case." *Id.* Likewise, the Apple court held "claims based on fair, reasonable and non-discriminatory licensing obligations are not contingent upon the results of patent infringement suits regarding the same patents." *Apple, Inc. v. Motorola Mobility*, Inc., No. 11-cv-178 BBC, 2011 WL 7324582, *6 (W.D. Wisc. 2011). The *Apple* court reasoned:

> The policies of the standard setting organizations become far less useful or effective if a company who has declared its patents essential, thereby encouraging the organization to adopt the standard, can then refuse a fair, reasonable and non-discriminatory license until essentiality is proven, either through patent infringement litigation or otherwise.

*Id.*, citing *Nokia v. Qualcomm and Ericsson v. Samsung.*

In denying a patentee's motion to dismiss an implementer's claims for declaratory judgment of RAND terms, the *Realtek* court stated "the determination of a reasonable royalty is part of a live controversy between the parties over defendants' claims of patent infringement, which is independent of whether defendants breached the alleged contracts." *Realtek v. LSI*, 2012 WL 4845628, *6.

TQD, for its argument that there is no justiciable controversy alleged in ZyXEL's declaratory judgment counterclaims, relies on an order in the Apple case in which the Court dismissed Apple's claims *on the eve of trial* when Apple stated it would not commit to be bound by any F/RAND rate determined by the court. Opening Br. D.I. 19 at 16, citing *Apple Inc.*, 2012 Dist. LEXIS 157525 at *6-7. TQD conveniently ignores that at the pleading stage, the same court denied Motorola's motion to dismiss Apple's claims for lack of ripeness. *Apple,* 2011 WL 7324582, *6. Indeed, the Wisconsin court rejected exactly the argument TQD makes here, and held that Apple's claims were ripe although neither essentiality nor infringement had been

pleaded.  *Id.*  The court also concluded that Apple had alleged "concrete and ongoing injuries that are sufficiently imminent to warrant judicial action" and that Apple might "suffer hardship if the court withholds consideration of the issues presented.  *Id.* *7.  The court's pre-trial decision relied on by TQD was not based on ripeness or lack of controversy.  In that case, Motorola never asserted counterclaims for patent infringement, presumably because it had already brought such claims against Apple in the ITC and in two related cases in the district of Wisconsin. 2011 WL 73245, *3.  Thus, when Apple, shortly before trial, purported to "reserve the right to refuse and proceed to further infringement litigation" the court reasoned that determining a RAND rate would not prevent continued patent infringement litigation or protracted negotiations.  The Wisconsin court also applied the *eBay* test for obtaining injunctive relief its case *and the related cases* and concluded that it was not satisfied.  2012 U.S. Dist. LEXIS 15725, *7-11, citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Finally, the Wisconsin court concluded that it would be inappropriate to exercise its discretion to enter a declaratory judgment if it would have no practical effect.  *Id.* at *12.  This action is in a very different posture.  There is no related litigation.  Thus, the concerns that led the Wisconsin court to dismiss Apple's claims are manifestly not implicated.  If ZyXEL is found to be practicing standard-essential patents that are not invalid, the court will issue a judgment requiring ZyXEL to pay a reasonable royalty and the entire dispute between TQD and the defendants will be resolved.  Thus, this is the opposite of a case where the declaratory judgment of FRAND terms would be an exercise in futility.

### 3.        The Requested Declaratory Judgment of FRAND Terms Would Be Conclusive With Respect to Any Standard-Essential Patents.

The second *Step-Saver* factor, conclusivity, is met because at the end of this action, all the issues in dispute will have been decided.  Plaintiffs understand that the Court will not decide F/RAND issues until toward the end of the proceedings, after claim construction.

**4.      The Requested Declaratory Judgments Would Be Useful Because They Will Resolve the Central Dispute Between the Parties**

TQD has not set out a *Step Saver* analysis in its opening brief, but presumably its argument that the Court's declaring FRAND terms would be "a waste of time" states its position on the utility factor.  The declaratory judgment that ZyXEL has requested in its second counterclaim will serve useful purposes, however, because they will bring to a conclusion the parties' disputes concerning F/RAND license terms for the asserted patents.

## V.      CONCLUSION

For the reasons set out above, the motion to dismiss should be denied in its entirety.

Dated:  May 1, 2014

*Of Counsel:*

Yitai Hu (admitted *pro hac vice*)
Elizabeth H. Rader (admitted *pro hac vice*)
Tsai-Yu (April) Chen (admitted *pro hac vice*)
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, California  94025-4004
(650) 838-2008
yitai.hu@alston.com
elizabeth.rader@alston.com
april.chen@alston.com

<u>    */s/ Kenneth L. Dorsney*    </u>
Kenneth L. Dorsney (Bar No. 3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendants*
*ZyXEL Communications, Inc. and ZyXEL*
*Communications Corporation*