**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 13-cv-2013-RGA |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ZYXEL COMMUNICATIONS, INC. | ) | |
| and | ) | |
| ZYXEL COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TQ DELTA, LLC'S REPLY
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED
COUNTERCLAIMS OF DEFENDANT ZYXEL COMMUNICATIONS, INC.
AND COUNTERCLAIMS OF ZYXEL COMMUNICATIONS CORPORATION**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

Counsel for Plaintiff TQ Delta, LLC

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.   The Court May Properly Rely Upon TQD's Patent Declarations Because They Are Integral to the Claim for Breach of Contract ................................................................. 1

II.  ZyXEL's Opposition Makes Clear That It Has Failed To Plead a Contractual Provision That was Breached, Let Alone a Basis for a Breach of Such a Provision .......... 2

III. ZyXEL Has Failed to Plead a Basis for Breach of Contract for Seeking Injunctive Relief ............................................................................................................................. 7

IV.  ZyXEL's Opposition Fails to Show that Its Counterclaim Two Seeks More Than An Advisory Opinion ................................................................................................... 8

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Wachovia Mortg. Corp.*,
   497 F. Supp. 2d 572 (D. Del. 2007) ................................................................................... 2

*Apple Inc. et al. v. Motorola, Inc.*,
   Nos. 2012-1548, -1549, 2014 U.S. App. LEXIS 7757 (Fed. Cir. April 25, 2014) ............. 6, 7, 9

*Apple, Inc. v. Motorola Mobility, Inc.*,
   No. 11–cv–178–bbc, 2012 U.S. Dist. LEXIS 157525 (W.D. Wis. Nov. 2, 2012) ...................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 1, 3, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) ......................................................................................................... 8

Ericsson Inc. v. D-Link Sys., Inc.,
   No. 6:10-cv-473, 2013 U.S. Dist. LEXIS 110585 (E.D. Tex. Aug. 6, 2013) ...................... 7, 10

*In re Burlington Coat Factory Sec. Litig.*
   114 F.3d 1410 (3d Cir. 1997) ........................................................................................... 2

*In re Innovatio IP Ventures Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ............................................................................ 4, 5, 6

*Microsoft Corp. v. Motorola, Inc.*,
   864 F. Supp. 2d 1023 (W.D. Wash. 2012) ...................................................................... 5, 6, 9

**SUMMARY OF ARGUMENT**

1. While ZyXEL's counterclaims fail to identify the contractual provisions that are asserted to have been breached, the Court may properly rely upon TQD's patent declarations, as they are admittedly operative in forming the contract upon which the claim is based.

2. ZyXEL's Opposition makes clear that it has failed to plead a contractual provision that has been breached. ZyXEL is left with the type of "legal conclusions" and "naked assertions devoid of further factual enhancement" that the Supreme Court described as insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the (unpled) language of the contract is to be considered, ZyXEL's counterclaims still fail because ZyXEL has not plead that it is an "<u>applicant</u>" that seeks a license for "<u>implementations</u>" of the standard.

3. ZyXEL has failed to allege facts to support the conclusion that seeking injunctive relief could be a "breach of contract" in this case.

4. ZyXEL's five pages of disjointed argument fail to meet the issue head-on, as to whether it is seeking an advisory opinion. Unless and until ZyXEL applies for a license and agrees to be unconditionally bound by an adjudicated RAND rate, an adjudication of RAND terms would be nothing more than an advisory opinion that ZyXEL can reject at its whim.

**ARGUMENT**

**I.   The Court May Properly Rely Upon TQD's Patent Declarations Because They Are Integral to the Claim for Breach of Contract**

ZyXEL incorrectly argues that TQD's motion calls for summary judgment because it implicates documents outside of the pleadings. D.I. 31 at 2. The Court may properly rely upon the Patent Declarations because they are integral to ZyXEL's claim for breach of contract.

> As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, <u>an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into</u>

<u>one for summary judgment." "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.</u>"

*In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1426 (3d Cir. 1997) (first alteration in original) (emphasis added) (citations omitted).

ZyXEL's opposition acknowledges that the Patent Declarations are the legally operative documents for the purpose of contract formation. D.I. 31 at 6 (stating "[a] patentee's declarations to the ITU agreeing to license on RAND terms constitute acceptance of the ITU's offer for purposes of contract formation"). The Patent Declarations are therefore integral to the counterclaims, particularly, where, as here, the declarations qualify and limit the licensing obligation. Accordingly, the Court should consider the Patent Declarations.

**II.     ZyXEL's Opposition Makes Clear That It Has Failed To Plead a Contractual Provision That was Breached, Let Alone a Basis for a Breach of Such a Provision**

ZyXEL's Opposition highlights its failure to plead any contractual provision that was breached. This failure dooms its claim for breach of contract. As the Court held in *Anderson v. Wachovia Mortgage Corp.*,

> "In order to survive a motion to dismiss for failure to state a breach of contract claim, [a] <u>plaintiff must demonstrate</u>: first, the existence of the contract, whether express or implied; second, <u>the breach of an obligation imposed by that contract</u>; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003) (citations omitted). "Clear and unambiguous language found in a contract is to be given its ordinary and usual meaning." *Iacono v. Barici,* Civ. A. No. 06C-02-021RFS, 2006 WL 3844208, at *2 (Del. Super. Dec. 29, 2006) . . . .
>
> It is undisputed that plaintiffs and defendants entered into mortgage contracts. (D.I. 12, exs. B-D) <u>Plaintiffs allege that defendants' conduct breached these contracts; however, plaintiffs "[have] not identified any express contract provision that was breached.</u>" *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* 901 A.2d 106, 116 (Del. 2006). As a result, the court finds that <u>plaintiffs have failed to satisfy the second prong of the breach of contract analysis and will grant defendants' motion to dismiss</u> as to that count.

*Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (alteration in

original) (emphasis added).

ZyXEL's counterclaims are devoid of any pleading of the actual contract terms alleged to have been breached. Lacking any allegation of the operative contractual language provided by TQD's Patent Declarations, the counterclaims essentially make naked assertions that TQD has an obligation to make a RAND offer to license any standard essential claims ("SECs"), without qualification, *e.g.*, to those who do not even apply for a license or show that their products implement the standard. The Patent Declarations, however, demonstrate that ZyXEL's claim of breach rests upon unsupported, conclusory statements about the contract.

Notably, ZyXEL's counterclaims are not accompanied by the *contract* itself (which would include the Patent Declarations). Nor do the counterclaims *plead* the actual *terms* of the contract that are alleged to give rise to an obligation to license SEC's. Rather, ZyXEL's counterclaim makes the naked statement that "[a] patent holder who makes a written declaration to the ITU stating that it is prepared to grant licenses on FRAND terms makes a contractual commitment for the benefit of potential willing licensees, who are third-party beneficiaries to that commitment." D.I. 18, Counterclaims, at ¶ 7.[1] Such conclusory statements "devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

The only evidence of the actual RAND licensing obligation is the substance of the Patent Declarations provided by TQD. The Patent Declarations show that the alleged contractual provision extends only to "applicants" for such a license (for implementations of the standard). There is no allegation that ZyXEL applied for a license, so as to be entitled to the benefits of TQD's agreement with the ITU (or that it would be willing to unconditionally accept a license to TQD's SECs on RAND terms). ZyXEL makes only an insufficient and incomplete allegation

---

[1] Contrary to ZyXEL's assertions, TQD's Patent Declaration only requires that TQD be "willing to negotiate" and "prepared to grant" a license to its SECs on RAND terms to an "applicant" that seeks a license for "implementations" (i.e., products that comply with the standard). *See* D.I. 28, Ex. A at A-1, A-3.

that it is now "willing to take a license." D.I. 18 at ¶ 12. But, a "willingness to take a license" (*e.g.*, conditioned upon an adjudication of infringement and validity) is not an "application" for a license (nor does it acknowledge that any of its products constitute an "implementation" of any SEC). Because the alleged contractual obligation extends only to "applicants" for a license for standard-compliant products, a matter that has not been pled, ZyXEL's claim for breach of contract is facially defective.

Having failed to identify any contractual provision giving rise to an unqualified obligation to license SECs, ZyXEL is forced to argue that TQD must offer a FRAND license to a party who does not apply for a license. D.I. 31 at 8-9. In doing so, ZyXEL argues that TQD is contractually bound to "offer" a FRAND license to those who do not apply for a license, but rather merely express interest in a license and are alleged to be "willing[] to take a license." *Id.* at 8-9 ("ZyXEL responded to TQD expressing its interest in a license discussion . . . All of ZyXEL's conduct alleged illustrates its willingness to take a license to TQD's patent portfolio."). ZyXEL then argues that the case law does not support the premise that a party must plead that it "applied" for a license. *Id.* at 9-10.

Tellingly, however, ZyXEL excerpts its cited case law to remove text that refutes its position here. *See id.* at 10 (citing *In re Innovatio*.) In *In re Innovatio*, Chief Judge Holderman addressed this very issue; the portion of the quote omitted by ZyXEL is underlined:

> <u>Innovatio also contends that the [manufacturer's amended complaint ("MAC")]'s breach of contract claim fails because it fails to allege that the Manufacturers triggered the RAND obligation by requesting a license from Innovatio. In support, the MAC notes that some of the RAND assurances from Innovatio's predecessors specified that they were required to offer a RAND license only "upon request." (MAC ¶¶ 62, 63.) But other assurances, as alleged, do not include this qualifier. (*Id.* ¶¶ 64-66.) With respect to those assurances,</u> there is no basis for concluding that the Manufacturers were required to request a RAND license before bringing a contract claim for Innovatio's failure to offer one.

*In re Innovatio IP Ventures Patent Litig.*, 921 F. Supp. 2d 903, 924 (N.D. Ill. 2013) (emphasis

4

added). The excerpted beginning of the only sentence quoted by ZyXEL ("With respect to those assurances") plainly shows that the holding turned on the contractual language at issue. The contract in that case was formed by the "assurances" (commonly called "letters of assurance," which are the equivalent of the Patent Declarations in this case). While Judge Holderman did not find that all of the assurances provided by the patentee in *Innovatio* were qualified in such a manner that required the implementer to first request a license, his holding shows that the specific language of the contracts ("assurances" or Patent Declaration) is controlling on this issue.

Unlike the unqualified "assurances" in *Innovatio*, TQD's Patent Declarations in this case provide that TQD is "<u>prepared to grant</u>" a license to its SECs on RAND terms to an "<u>applicant</u>" that seeks a license for "<u>implementations</u>" of the particular DSL standard:

> The Patent Holder is **prepared to grant** a license to an unrestricted number of **applicants** on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell **implementations** of the [specified DSL standard].

D.I. 28, Ex. A at A-3 (emphasis added). Thus, TQD has no obligation to license one who has not applied for a license or has no products that implement the standard.[2] Notwithstanding ZyXEL's selective quotation, *Innovatio* supports TQD's position in this case.

ZyXEL also argues that *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023 (W.D. Wash. 2012) supports its position that it need not "apply" for a license. D.I. 31 at 10. But, the context of the cited statement in *Microsoft* (*id.* at 10) dealt with Motorola's claim that Microsoft "repudiated any rights to a RAND license" by failing to seek a license, thus extinguishing Motorola's RAND obligation. *Microsoft Corp.*, 864 F. Supp. 2d at 1033-34 ("Motorola argues that despite its RAND commitments . . . it does not have any obligations towards Microsoft

---

[2] In each instance where ZyXEL responded to an allegation that certain of its products operated in accordance with a specific DSL standard, it denied the allegation. *Compare*, *e.g.*, D.I. 1 at ¶ 22 *with* D.I. 7, Answer at ¶ 22.

5

because Microsoft (1) has failed to satisfy conditions precedent and (2) <u>by failing to satisfy those conditions has repudiated any rights to a RAND license</u>.") (emphasis added).  The court stated that "Motorola cannot avoid [its RAND] commitment simply by contacting the implementer before the implementer applies for a license." *Id.* at 1035. And the court stated that "[s]uch a result is contrary to the purpose of Motorola's commitments . . . ." *Id.* at 1034.  The license commitment therefore did not turn upon "whether the patentee or the implementer makes the first contact." *Id.* at 1034-35 (quoting expert's opinion).

But, TQD's motion does not rest on the notion that its RAND licensing obligation can be extinguished depending on whether or not the implementer is the "first" to make the contact or even "first" applies for a license.  ZyXEL confuses the issue of whether or not the patent holder's RAND licensing obligation is necessarily extinguished if the implementer did not <u>first</u> request a license, with the issue of whether or not the implementer can properly claim breach of contract when it has <u>never</u> requested a license. Thus, unlike the concern expressed in *Microsoft*, the RAND commitment here may still be "available to implementers," but an implementer cannot claim breach of contract when it failed to request a license.[3]  An extension of *Microsoft* as urged by ZyXEL would run contrary to *Innovatio*.

TQD's position is further supported by the policy underlying the Federal Circuit's recent decision in *Apple Inc. et al. v. Motorola, Inc.*, Nos. 2012-1548, -1549, 2014 U.S. App. LEXIS 7757, at *106 (Fed. Cir. April 25, 2014) (stating that "an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect").  The Federal Circuit's holding reflects the policy concerns that arise when an implementer "unilaterally refuses a FRAND royalty or unreasonably delays negotiations" with

---

[3] Unlike this case, the implementer in *Microsoft* had requested a license.  *Id.* at 1035 ("Microsoft has stated to this court that not only does it believe that it needs a license, it is ready and willing to accept a license on RAND terms. (*See, e.g.*, Microsoft Reply . . . ('. . . Microsoft is seeking a license on RAND terms—in this very action.').).").

the patent holder. This same policy concerns applies here. No sound policy is furthered by allowing implementers to sue patent holders for breach of a RAND commitment when the implementer has never even applied for a license and seeks to "unreasonably delay negotiations" by forcing a trial on the merits, all the while refusing to commit that it will accept adjudicated RAND terms.[4]

In sum, ZyXEL's counterclaims should be dismissed because they fail to allege a contractual provision that was *breached*. If the (unpled) language of the contract is to be considered, ZyXEL's counterclaims still fail because ZyXEL has not plead that it is an "<u>applicant</u>" that seeks a license for "<u>implementations</u>" of the particular DSL standard.

### III. ZyXEL Has Failed to Plead a Basis for Breach of Contract for Seeking Injunctive Relief

ZyXEL's counterclaim for breach of contract also fails to state a claim upon which relief can be granted because it is based on the incorrect assumption that TQD is precluded from seeking an injunction. *See Apple,* 2014 U.S. App. LEXIS 7757, at *105-06. In *Apple*, the Federal Circuit rejected the defendants' argument that patentees are categorically forbidden from receiving an injunction for SEPs, stating

> <u>To the extent that the district court applied a per se rule that injunctions are unavailable for SEPs, it erred</u>. . . . A patentee subject to FRAND commitments may have difficulty establishing irreparable harm. On the other hand, <u>an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect</u>. *See, e.g.*, U.S. Dep't of Justice and U.S. Patent and Trademark Office, *Policy Statement on Remedies for Standard-Essential Patents Subject to Voluntary F/RAND Commitments*, at 7-8 (Jan. 8, 2013).

*Apple,* 2014 U.S. App. LEXIS 7757, at *105-06 (emphasis added).

---

[4] ZyXEL misapprehends the import of TQD's citation to *Ericsson Inc. v. D-Link Sys., Inc.*, No. 6:10-cv-473, 2013 U.S. Dist. LEXIS 110585 (E.D. Tex. Aug. 6, 2013) (holding that "Intel cannot rely on its failure to negotiate to prove Ericsson's failure to make a legitimate license offer."). D.I. 31 at 10. *Ericsson* supports the notion that one cannot assert a breach of a RAND obligation based on its own failure to comply with the requirements for entitlement to a RAND license.

While ZyXEL apparently argues that the right to injunctive relief depends on the facts (D.I. 31 at 13), ZyXEL has failed to allege any facts to support the conclusion that seeking injunctive relief in this case could somehow be a "breach of contract," even though it has never applied for a license.  This is another example of the type of "naked assertions devoid of further factual enhancement" that the Supreme Court described as insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## IV. ZyXEL's Opposition Fails to Show that Its Counterclaim Two Seeks More Than An Advisory Opinion

ZyXEL sets forth five pages of disjointed argument that fail to meet the issue of whether it is seeking an advisory opinion, head-on.  D.I. 31. at 13-18.  Nowhere does ZyXEL ever state that it will accept the terms of the RAND license that it seeks from this Court.  ZyXEL's Counterclaim Two requests that the Court determine a "proper FRAND license" and if TQD refuses to offer ZyXEL a license on such terms, a finding that TQD's essential patents are unenforceable.   D.I. 18, at ¶¶ 26-28.  But, unless ZyXEL applies for a license and agrees to be unconditionally bound by the same, an adjudication of RAND terms is premature, not ripe, and would be nothing more than an advisory opinion that ZyXEL can summarily reject at its whim.

Faced with this conundrum, ZyXEL's opposition memorandum attempts to rewrite the very relief that it seeks in its pleadings, stating that "[i]f ZyXEL is found to be practicing standard-essential patents that are not invalid, the court will issue a judgment requiring ZyXEL to pay a reasonable royalty and the entire dispute … will be resolved."  D.I. 31 at 18.  This statement is incorrect on many levels.  First, this statement of relief (i.e., an order requiring ZyXEL to pay the RAND rate) is not the relief that was pled.  ZyXEL only seeks an order that the patents are unenforceable if TQD does not offer the adjudicated rate.  Second, ZyXEL is not entitled to a RAND rate unless it is an applicant, nor is it entitled to a RAND rate if it forces a

8

trial (in which case TQD would be entitled to "no less than a reasonable royalty" (unconstrained by RAND)). Third, forcing a patent holder to undergo a trial on the merits in order to extract a RAND request from an implementer would make a mockery of the system. And, importantly, to do so would run directly contrary to the policy concerns that arise when an implementer "unreasonably delays negotiations" with the holder of a RAND obligated patent. *See Apple*, 2014 U.S. App. LEXIS 7757, at *106. ZyXEL's opposition "reveals its cards," as this is precisely what it seeks to do in this case.

The Wisconsin *Apple* case rejected the argument that an adjudicated rate "would resolve the dispute." *Apple, Inc. v. Motorola Mobility, Inc.,* No. 11–cv–178–bbc, 2012 U.S. Dist. LEXIS 157525, at *6-7 (W.D. Wis. Nov. 2, 2012). In that case, the court dismissed Apple's claims on the eve of trial because Apple would not agree to accept a RAND rate to be set by the court:

> [I]t has become clear that Apple's interest in a license is qualified. . . . In other words, if Apple is unsatisfied with the rate chosen by the court, it "reserves the right to refuse and proceed to further infringement litigation." …. I questioned whether it was appropriate for a court to undertake the complex task of determining a FRAND rate if the end result would be simply a suggestion that could be used later as a bargaining chip between the parties. Apple responded that the rate would resolve the dispute in this particular case, namely, whether Motorola's license offer was FRAND and if not, what the rate should have been. Apple's response was not satisfactory and did not assuage my concerns about determining a FRAND rate that may be used solely as a negotiating tool between the parties. After further consideration, I believe it would be inappropriate to grant Apple's clarified request for specific performance. . . . the normal remedy for a breach of contract is an award of damages, while specific performance is an "exceptional" remedy.

*Apple, Inc.,* 2012 U.S. Dist. LEXIS 157525, at *6-7 (internal citations omitted).

While ZyXEL argues that the claim for a RAND determination was not dismissed until the eve of trial in *Microsoft* (and other assertions not recognized by the court), that case serves as an *exemplar* as to why this Court should scrutinize ZyXEL's declaratory judgment now, at the pleading stage, *before* the parties and the Court waste years of time, money and resources.

9

Notably, ZyXEL's requests that the <u>Court determine "proper FRAND license terms</u> and conditions" and <u>if TQD refuses to offer ZyXEL</u> a license on such terms and conditions, find that the patents are unenforceable.  But, all of this would be an exercise in futility unless ZyXEL agrees to be unconditionally bound by an adjudicated RAND rate.  Absent such a commitment, ZyXEL asks the Court to exercise its discretion to extend declaratory judgment jurisdiction to render an advisory opinion.  As the court in *Apple* recognized, such an advisory opinion would likely be unfairly used as a "bargaining chip" (i.e., a "ceiling") in continued negotiations—leading to a "sub-RAND" royalty rate.

> The court in *Ericsson* likewise recognized that such a request seeks an advisory opinion:
>
> > In their post-trial briefing, Defendants asked the Court to determine an appropriate RAND rate for the patents in suit. *See* Docket No. 588 at 2. However, Defendants wavered on whether they would agree to actually *pay* the RAND rate determined by the Court. <u>In essence, Defendants asked the Court to determine Ericsson's initial RAND offer, but they refused to make any assurances they would accept such an offer. This would have amounted to nothing more than an advisory opinion as to Ericsson's initial RAND license offer</u>. *See Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988) ("<u>At the heart of the 'case or controversy' requirement is the prohibition against advisory opinions.</u>") . . . . <u>Defendants cannot ask the Court to determine a RAND rate but refuse to be bound by it</u>.

*Ericsson,* 2013 U.S. Dist. LEXIS 110585, at *74-75 (emphasis added); *cf. Microsoft,* 864 F. Supp. 2d at 1035 ("Microsoft has stated to this court that not only does it believe that it needs a license, it is ready and willing to accept a license on RAND terms.").  Counterclaim Two should therefore be dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, TQD submits that its motion to dismiss should be granted.

Respectfully submitted,

FARNAN LLP

Date: May 19, 2014

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

Counsel for Plaintiff TQ Delta, LLC