**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 13-cv-2013-RGA |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ZYXEL COMMUNICATIONS, INC. | ) | |
| and | ) | |
| ZYXEL COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TQ DELTA, LLC'S ANSWER TO**
**DEFENDANT ZYXEL COMMUNICATIONS, INC.'S AMENDED COUNTERCLAIMS**

Plaintiff, TQ Delta, LLC ("TQ Delta"), by and through its attorneys, Answers the Amended Counterclaims of Defendant ZyXEL Communications, Inc. ("ZyXEL") below.

**TQ DELTA'S ANSWER TO ZYXEL'S COUNTERCLAIMS**

**NATURE OF ACTION**

1.      TQ Delta admits that ZyXEL's counterclaim purports to be for breach of contractual commitments to the International Telecommunications Union ("ITU") and its members, affiliates, and adopters, however, ZyXEL has failed to state a claim upon which relief can be granted for the reasons set forth in TQ Delta's Motion to Dismiss and supporting documents.  All other allegations of this paragraph that are not specifically admitted are denied.

**PARTIES**

2.      Admitted.

3.      Admitted.

**JURISDICTION AND VENUE**

4.      Admitted.

5.      TQ Delta admits that it is subject to personal jurisdiction in this venue for this case.  All other allegations of this paragraph that are not specifically admitted are denied.

6.      Admitted.

**FACTUAL BACKGROUND**

**A.      TQ Delta's Asserted Patents and Related Standards.**

1.      Admitted.

2.      Admitted.

3.      TQ Delta admits that one goal of standard-setting organizations, such as the ITU, is the facilitate interoperability.  TQ Delta admits that members of the ITU may work together to develop technical "standards" – agreed-upon protocols that create a common design for a technical function.  TQ Delta admits that, if a networking device manufacturer follows a given standard, any standard-compliant networking devices should successfully communicate with any other standard-compliant networking equipment.  TQ Delta has insufficient information to admit or deny that "[o]nly if each component follows the applicable standards will the components work seamlessly with each other."  TQ Delta denies that "[p]atents that are necessary for the proper functioning of the standard are known as "essential" patents" to the extent this statement is inconsistent with the definition of a standard essential patent pursuant to ITU patent policies. All other allegations of this paragraph that are not specifically admitted are denied.

4.      TQ Delta admits that, during the course of attempting to negotiate a license with ZyXEL, TQ Delta notified ZyXEL that "the use of one or more patent claims in the [TQ Delta DSL patent] portfolio may be required to practice or otherwise comply with certain DSL-related

Recommendations, Deliverables and/or standards. TQ Delta is willing to negotiate a license with ZyXEL on a non-discriminatory basis on reasonable terms and conditions with respect to any such standard-essential patent claims."   All other allegations of this paragraph that are not specifically admitted are denied.

5.     TQ Delta admits that it conditionally committed to the ITU that it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of" specific ITU standards, and that its "willingness to license is conditioned on Reciprocity" for such specific ITU standards by the applicant, where:  (1) the license is for "Patents, the use of which would be required to implement" the specific ITU standard, (2) "'Patent' means those claims contained in and identified by patents, utility models and other similar statutory rights based on inventions (including applications for any of these) solely to the extent that any such claims are essential to the implementation of the" specific ITU standards, and (3) "'Reciprocity' means that the Patent Holder shall only be required to license any prospective licensee if such prospective licensee will commit to license its Patent(s) for implementation of the same [ITU standard] Free of Charge or under reasonable terms and conditions."  TQ Delta has insufficient information to admit or deny, and therefore denies, the allegation that "[w]here a patent holder refuses to make such a declaration and indicates that it is not willing to license under FRAND terms, 'the Recommendation / Deliverable shall not include provisions depending on the patent.'"  All other allegations of this paragraph that are not specifically admitted are denied.

6.     TQ Delta admits that legally enforceable contractual rights and obligations can be created by the conditional commitments TQ Delta actually made as recited above in paragraph 5, however, ZyXEL failed to satisfy certain conditions precedent to benefit from such contractual

rights and obligations. Further, ZyXEL's allegations are inconsistent with the commitments required by the ITU, and the contractual rights and obligations created by such commitments, and therefore, such allegations are denied.  All other allegations of this paragraph that are not specifically admitted are denied.

7.      TQ Delta admits that patent holder commitments to the ITU are made, in part, for the benefit of willing licensees who apply for a license but not for those who infringe first and only agree to a license after being found liable for patent infringement.    TQ Delta admits that a patent holder making a declaration to the ITU becomes (i) conditionally contractually bound to the ITU; (ii) for the benefit of certain third party beneficiaries who have satisfied certain conditions precedent; (iii) to license its essential patent claims on FRAND terms for applicants. To the extent ZyXEL alleges that it is a willing licensee or applicant, or that it has satisfied conditions precedent to being a third party beneficiary to TQ Delta's commitments to the ITU, such allegations are denied.  All other allegations of this paragraph that are not specifically admitted are denied.

**B.      The Parties' Negotiation History**

8.      TQ Delta admits that on June 26, 2013, it sent a first letter to ZyXEL, including an overview of TQ Delta's DSL patent portfolio and an invitation to open licensing discussions. All other allegations of this paragraph that are not specifically admitted are denied.

9.      TQ Delta denies that TQ Delta's efforts to negotiate a non-disclosure and confidentiality agreement ("NDA") and standstill agreement began in October 2013.  Rather, TQ Delta sent a complete draft of such an agreement to ZyXEL with its first communication to ZyXEL in June 2013.  TQ Delta admits that it sent four emails between July 25, 2013 and September 24, 2013, ZyXEL sent a single email on October 2, 2013, TQ Delta sent four emails

between October 2 and 29, 2013, ZyXEL sent a single email on November 12, 2013, and TQ Delta sent two emails between November 12 and 25, 2013 regarding the NDA and standstill agreement. All other allegations of this paragraph that are not specifically admitted are denied.

10.     TQ Delta admits that, after ZyXEL failed to respond to an email from TQ Delta on November 12, 2013, on November 25, 2013, TQ Delta asked for ZyXEL's final position on the NDA and standstill agreement by November 29, 2013. TQ Delta further admits that it had not heard anything from ZyXEL on November 29 or during the ten days thereafter, at which point TQ Delta finally filed suit. All other allegations of this paragraph that are not specifically admitted are denied.

11.     TQ Delta denies that the parties were still in a "process of finalizing the NDA and standstill agreement" before TQ Delta filed this lawsuit at least because ZyXEL had ceased corresponding with TQ Delta after TQ Delta's November 12, 2013 correspondence. TQ Delta admits that it did not specify financial terms for any potential license agreement between the parties. All other allegations of this paragraph that are not specifically admitted are denied.

**C.     ZyXEL is a Willing Licensee**

12.     TQ Delta further denies that ZyXEL was "engaged" in the NDA negotiation with TQ Delta for two months. Rather, ZyXEL's non-responsiveness and delay throughout the process showed bad faith and an unwillingness to engage in any meaningful licensing negotiations. TQ Delta lack sufficient knowledge to know whether "ZyXEL is [currently] willing to take a license to TQ Delta's DSL patent portfolio on true FRAND terms," and therefore denies the same. TQ Delta, based on ZyXEL's bad faith and an unwillingness to engage in any meaningful pre-litigation licensing negotiations, and its myriad defenses and

counterclaims, TQ Delta denies that ZyXEL has been a willing licensee.  All other allegations of this paragraph that are not specifically admitted are denied.

### TQ DELTA'S ANSWER TO ZYXEL'S COUNTERCLAIM ONE

13.     TQ Delta restates and incorporates by reference its responses to the allegations of paragraphs 1 through 12 of ZyXEL's Amended Counterclaims.

14.     TQ Delta admits that it conditionally committed to the ITU that it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of" specific ITU standards, and that its "willingness to license is conditioned on Reciprocity" for such specific ITU standards by the applicant, where:  (1) the license is for "Patents, the use of which would be required to implement" the specific ITU standard, (2) "'Patent' means those claims contained in and identified by patents, utility models and other similar statutory rights based on inventions (including applications for any of these) solely to the extent that any such claims are essential to the implementation of the" specific ITU standards, and (3) "'Reciprocity' means that the Patent Holder shall only be required to license any prospective licensee if such prospective licensee will commit to license its Patent(s) for implementation of the same [ITU standard] Free of Charge or under reasonable terms and conditions."  ZyXEL did not apply for a license, negotiate in good faith, or agreed to reciprocity, and thus TQ Delta denies that ZyXEL is entitled to the benefit of a license to TQ Delta's standard-essential patents on FRAND terms.  All other allegations of this paragraph that are not specifically admitted are denied.

15.     TQ Delta admits that those that implement DSL standards, apply for a license, negotiate in good faith, and agree to reciprocity are intended beneficiaries of TQ Delta's commitments to the ITU.  TQ Delta denies the ZyXEL is entitled to enforce TQ Delta's

commitments to the ITU because ZyXEL did not apply for a license, negotiate in good faith, or agreed to reciprocity.  All other allegations of this paragraph that are not specifically admitted are denied.

16.     TQ Delta admits that it was obligated to attempt to negotiate with an applicant a license to certain patents essential to certain DSL standards consistent with the applicable patent policy of the standards and bylaws of the ITU.  All other allegations of this paragraph that are not specifically admitted are denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     TQ Delta admits that ZyXEL seeks such an award of specific performance requiring TQ Delta to submit to ZyXEL a license offer for the Asserted Patents that is capable of acceptance, but denies that ZyXEL is entitled to such an award.

23.     TQ Delta admits that ZyXEL alternatively seeks such an award of specific performance requiring TQ Delta to submit to ZyXEL a license offer for TQ Delta's patents that it alleges are essential to ITU standards that is capable of acceptance, but denies that ZyXEL is entitled to such an award.


## COUNTERCLAIM TWO

24-28. The Court dismissed ZyXEL's Counterclaim Two for lack of subject matter jurisdiction (D.I. 35) and, therefore, no response is required to paragraphs 24-28.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Waiver)

ZyXEL has waived the right to assert any alleged contractual claims against TQ Delta.

### SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

ZyXEL is estopped from asserting the alleged contractual claims against TQ Delta.

### THIRD AFFIRMATIVE DEFENSE
### (Repudiation)

ZyXEL has repudiated or rejected the alleged contractual benefits it seeks to enforce.

### FOURTH AFFIRMATIVE DEFENSE
### (Anticipatory Breach)

ZyXEL has anticipatorily breached the alleged contract with TQ Delta at least by refusing to accept a license on FRAND terms and conditions, and refusing to negotiate in good faith.

### FIFTH AFFIRMATIVE DEFENSE
### (Lack of irreparable harm)

ZyXEL is not entitled to injunctive relief or specific performance at least because it has no irreparable injury and it has adequate remedies at law.

### SIXTH AFFIRMATIVE DEFENSE
### (Lack of reliance)

ZyXEL's lack of reliance bars its counterclaim.

### SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

ZyXEL failed to mitigate any alleged damages or harm at least by refusing to negotiate in good faith for a license to TQ Delta's patents.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Laches)**

ZyXEL's counterclaim is barred by the doctrine of laches.

**NINTH AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

ZyXEL has failed to state a claim upon which relief can be granted.

**TENTH AFFIRMATIVE DEFENSE**
**(Failure of consideration)**

ZyXEL's breach of contract claim is barred due to a failure of consideration.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Statute of Frauds)**

ZyXEL's breach of contract claim fails to the extent the alleged contract is not in writing.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Failure of Performance/Condition Precedent)**

ZyXEL's breach of contract claim is barred because ZyXEL failed to perform and/or failed to satisfy a condition precedent.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

The relief requested by ZyXEL is barred by ZyXEL's unclean hands.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Privilege)**

ZyXEL's counterclaim or the relief requested is barred by applicable privileges, including fair competition and the litigation privilege.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(Noerr-Pennington)**

ZyXEL's counterclaim or the relief requested thereby is barred by the Noerr-Pennington doctrine.

**PRAYER FOR RELIEF**

WHEREFORE, TQ Delta, respectfully requests that the following relief:

A.     That the Court enter judgment in favor of TQ Delta that ZyXEL has infringed TQ Delta's '008 patent, '041 patent, '627 patent, '721 patent, '610 patent, '427 patent, '881 patent, '028 patent, '706 patent, '511 patent, '705 patent, '784 patent, '430 patent, '686 patent, '412 patent, '2,956 patent, '379 patent, '337 patent, '778 patent, '958 patent, '835 patent, '753 patent, '730 patent, '382 patent, '381 patent, '882 patent, '048 patent, '473 patent, '890 patent, '5,956 patent, '411 patent, and '546 patent;

B.     That the Court enter an order declaring that Plaintiff has complied with any RAND obligations and further enter a permanent injunction under 35 U.S.C. § 283 enjoining ZyXEL and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from infringement of TQ Delta's '008 patent, '041 patent, '627 patent, '721 patent, '610 patent, '427 patent, '881 patent, '028 patent, '706 patent, '511 patent, '705 patent, '784 patent, '430 patent, '686 patent, '412 patent, '2,956 patent, '379 patent, '337 patent, '778 patent, '958 patent, '835 patent, '753 patent, '730 patent, '382 patent, '381 patent, '882 patent, '048 patent, '473 patent, '890 patent, '5,956 patent, '411 patent, '546 patent;

C.     That the Court enter a judgment and order under 35 U.S.C. § 284 requiring ZyXEL to pay TQ Delta its damages, costs, expenses, and pre-judgment and post-judgment interest for ZyXEL's infringement of TQ Delta's '008 patent, '041 patent, '627 patent, '721 patent, '610 patent, '427 patent, '881 patent, '028 patent, '706 patent, '511 patent, '705 patent, '784 patent, '430 patent, '686 patent, '412 patent, '2,956 patent, '379 patent, '337 patent, '778

patent, '958 patent, '835 patent, '753 patent, '730 patent, '382 patent, '381 patent, '882 patent, '048 patent, '473 patent, '890 patent, '5,956 patent, '411 patent, and '546 patent;

D.     That the Court find this case exceptional under 35 U.S.C. § 285, and award TQ Delta its costs and fees in this action, including reasonable attorneys' fees and pre-judgment interest thereon; and

E.     That the Court grant TQ Delta such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

TQ Delta, pursuant to Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable.

DATED:  August 26, 2014                         Respectfully submitted,

                                                FARNAN LLP

                                                /s/ Brian E. Farnan
                                                Brian E. Farnan (Bar No. 4089)
                                                Michael J. Farnan (Bar No. 5165)
                                                919 North Market Street, 12th Floor
                                                Wilmington, Delaware  19801
                                                (302) 777-0300
                                                (302) 777-0301 (Fax)
                                                bfarnan@farnanlaw.com
                                                mfarnan@farnanlaw.com

                                                Peter J. McAndrews (admitted *pro hac vice*)
                                                Timothy J. Malloy (admitted *pro hac vice*)
                                                Thomas J. Wimbiscus (admitted *pro hac vice*)
                                                Sharon A. Hwang (admitted *pro hac vice*)
                                                Paul W. McAndrews (admitted *pro hac vice*)
                                                Anna M. Targowska (admitted *pro hac vice*)
                                                MCANDREWS, HELD & MALLOY, LTD.
                                                500 West Madison Street, 34th Floor

Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*