## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | ) | |
|       Plaintiff, | ) | |
| v. | ) | C.A. No. 13-cv-1835-RGA |
| | ) | |
| 2WIRE, INC., | ) | **JURY TRIAL DEMANDED** |
|       Defendant. | ) | |
| _____ | ) | **FILED UNDER SEAL** |
| | | |
| TQ DELTA, LLC, | ) | |
|       Plaintiff, | ) | |
| v. | ) | |
| | ) | C.A. No. 13-cv-1836-RGA |
| ZHONE TECHNOLOGIES, INC., | ) | |
|       Defendant. | ) | **FILED UNDER SEAL** |
| _____ | ) | |
| | ) | |
| TQ DELTA, LLC, | ) | |
|       Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ZYXEL COMMUNICATIONS, INC. | ) | C.A. No. 13-cv-2013-RGA |
| and ZYXEL COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
| | ) | **FILED UNDER SEAL** |
|       Defendants. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR CLARIFICATION REGARDING
ALLEGATIONS OF A LAW FIRM CONFLICT OF INTEREST**

**<u>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</u>**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)

Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews (admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ........................................................................................2

    A.   Broadcom Terminated All Representations by McAndrews in 2011 .......................2

    B.   McAndrews' Extensive Representation of TQ Delta From 2013 - Present...............3

    C.   In 2013, Broadcom Learned of McAndrews Work For TQ Delta on The Present Litigation Adverse to Broadcom....................................................................................4

    D.   Broadcom Now Erroneously Asserts That Some Non-Specific Conflict Should Deprive TQ Delta of Its Chosen Counsel ..................................................................6

III. ARGUMENT ............................................................................................................8

    A.   This Court May Determine There is No Disqualifying Conflict ..............................8

    B.   Disqualification Is Generally Disfavored as a "Drastic Measure" ..........................9

    C.   Having Waited Two Years to Raise the Issue, Broadcom Waived Any Alleged Conflict ........................................................................................................11

    D.   There is No Substantial Relationship Between the Present and Former Representations ..........................................................................................14

    E.   TQ Delta Would be Substantially Prejudiced If its Counsel Was Forced to Withdraw......................................................................................................18

IV.  CONCLUSION.......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Products & Chemicals, Inc. v. Airgas, Inc.*,
   No. 5249-CC, 2010 Del. Ch. LEXIS 35 (Del. Chancery March 5, 2010) ........................... 8, 18

*Biax Corp. v. Fujitsu Computer Sys. Corp.*,
   No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007) ......................... 17

*Carlyle Towers Cond'm Ass. v. Crossland Savings,*
   *FSB,* 944 F. Supp. 341 (D.N.J. 1996) ....................................................................................... 9

*Conley v. Chaffinch*,
   431 F. Supp. 2d 494 (D. Del. May 17, 2006) ...................................................... 10, 11, 12, 13

*In re Corn Derivatives Antitrust Litig.,*
   748 F.2d 157 (3d Cir.1984) .............................................................................................. 10, 18

*In re Nat' I Century Fin. Enters., Inc.*,
   2010 U.S. Dist. LEXIS 39524, 2010 WL 1257598 (S.D. Ohio 2010) ............................. 10, 11

*Javorski v. Nationwide Mutual Insurance Co.*,
   C.A. 3:06-CV-1071, 2006 U.S. Dist. LEXIS 81490 (M.D. Pa. Nov. 6, 2006) ....................... 10

*Liberate Technologies, LLC v. Worldgate Communications, Inc.*,
   133 F. Supp. 2d 357 (D. Del. 2001) ....................................................................................... 11

*Moyroud v. Itek Corp.*,
   528 F. Supp. 707 (S.D. Fla. 1981) .......................................................................................... 18

*Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,*
   632 F.Supp. 418 (D.Del.1986) ................................................................................................ 10

*Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*,
   2008 WL 1826036 (D. Delaware 2008) ........................................................................... 10, 18

*Richardson-Merrell, Inc. v. Koller,*
   472 U.S. 424 (U.S. 1985) .......................................................................................................... 9

*Rohm & Haas v. Am. Cyanamid Co.*,
   187 F. Supp. 2d 221 (D. N.J. 201) ............................................................................................ 9

*Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*,
   C.A. No. 3:08-92, 2012 U.S. Dist. LEXIS 12881 (W.D. Penn, Feb. 2, 2012) ....................... 11

*SEC v. Tang*,
   831 F. Supp. 2d 1130, (N.D. Cal. 2011) ........................................................................... 10, 19

*Secure Axcess, LLC v. Dell Inc.*,
   No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 (E.D. Tex. Feb. 23, 2012) ........................ 18

*Sonos, Inc. v. D & M Holdings Inc.*,
   No. 14-1330-RGA, 2015 U.S. Dist. LEXIS 119718 (D. Del. 2015) ................................... 9, 17

*Thorner v. Sony Computer Entertainment America, Inc.*,
   C.A. No. 09-1 894-GEB, 2009 WL 4041624 (D.N.J. 2009) ..................................................... 9

*Underwriters* v. *Nalibotsky,*
    594 F. Supp. 1199 (E.D. Pa. 1984) ........................................................................................... 16

*Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust,*
    2010 U.S. Dist. LEXIS 30358 (N.D. Tex. March 25, 2010) ...................................................... 8

*Walker Digital, LLC v. Axis Communications AB, Axis Communications, Inc. and On–Net Surveillance Systems, Inc.,*
    2012 WL 5878668 (D. Del. 2012) ......................................................................... 9, 14, 15, 17

**Rules**

D. Del. LR 83.6(d)(2) ................................................................................................................. 14

M.R.P.C. Rule 1.9(a) ................................................................................................................. 14

## I.      INTRODUCTION

McAndrews, Held & Malloy, Ltd. ("McAndrews"), Plaintiff TQ Delta's trial counsel, takes our ethical duties very seriously.  Having reviewed our former client Broadcom's recent refusals to provide important and relevant discovery based on a belated allegation of a conflict of interest, we find it to be without merit and merely an attempt to delay that discovery and raise the costs of its long overdue completion.  Broadcom's extreme delay in raising the issue of a conflict of interest constitutes a waiver and seriously calls into question the merit of its assertions.

The following summary reflects the lack of merit in Broadcom's objections:

1.  ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

2. Broadcom has known of McAndrews' representation of TQ Delta in these actions for more than 2 years.  Broadcom also knew these cases involved Broadcom DSL chips, and yet never asserted that McAndrews had any conflict until a recent discussion about a subpoena to Broadcom.  Meanwhile, McAndrews toiled away on these cases for years.

3.  Over 2 years ago, after learning of TQ Delta's infringement allegations, ████████████
████████████████████████████████████████████████
████████████, but did not raise any issue about McAndrews' representation of TQ Delta.

4. More recently, Broadcom invited McAndrews to seek discovery directly from Broadcom rather than from the Defendants and demanded that this Court deny McAndrews motion to compel discovery of Broadcom-related documents from the Defendants.

5. Only after McAndrews requested consent from Broadcom's attorneys to accept service of a subpoena on Broadcom, more than two years after Broadcom knew of McAndrews' involvement in this case, did Broadcom assert any conflict.  It did so without a shred of

specificity.

6. When McAndrews asked for specificity, Broadcom ████████████████

████████████████████████████████████████████████████████████

(McAndrews Decl., ¶ 11.)

7. When McAndrews explained its non-relevance, Broadcom disingenuously responded

with ████████████████████ apparently grossly selected by searching for the combined

terms of "DSL" and "McAndrews."

8. To date, Broadcom has made no showing of any McAndrews work for Broadcom that

is substantially related to the specific technology of this suit.

For these reasons, as further explained below, TQ Delta and McAndrews ask this Court

for an order clarifying that it may proceed as counsel for TQ Delta in seeking subpoena

discovery from Broadcom in these matters.

## II.     STATEMENT OF FACTS

### A.     Broadcom Terminated All Representations by McAndrews ██████

Until approximately ████ McAndrews was one of a number of firms representing

Broadcom in patent prosecution and litigation matters.  McAndrews work for Broadcom

involved certain technologies (e.g., ████████████████████████████████

████████████████), but none involving the subject matter of these cases.  Broadcom then

terminated completely McAndrews.  McAndrews has not done any work for Broadcom since



None of the

remaining (or departed) lawyers represented Broadcom with regard to matters substantially

related to this matter.

2

**B.      McAndrews' Extensive Representation of TQ Delta From 2013 - Present**

In May 2013, McAndrews began representing TQ Delta on the subject matter resulting in the present litigation. When assuming this representation, McAndrews concluded there was no conflict because the work for TQ Delta was not related to the prior work done for Broadcom.

McAndrews' work for TQ Delta in this matter has been quite substantial. McAndrews is lead counsel, ███████████████████████████████████████████████████████ ████████ (McAndrews Decl., ¶ 13.)  The present cases, which involve claims of infringement of over 32 patents and ████████ of accused products, have been pending for over two years.[1]

TQ Delta has invested substantial resources in McAndrews to have it analyze and learn the patented technologies, complete initial and supplemental discovery, prepare thousands of pages of infringement contentions relating to hundreds of accused products, and analyze over 5,000 pages of invalidity contentions on the numerous patents.

- November 2013 – complaints filed

- April 2014 – TQ Delta serves identification of Accused Instrumentalities

- June 2014 – Defendants were required to serve core technical documents

- August 2014 – TQ Delta serves its Initial Claim Charts on 2Wire, Zhone, and ZyXEL, mapping the asserted claim language to the Accused Instrumentalities and six DSL standards.  Each set of claim charts amounted to several hundred pages of contentions.

- October 2014 – The parties exchanged their initial disclosures in the 2Wire, Zhone, and ZyXEL cases.  The parties continue discovery regarding issues relating to infringement,

---

[1] On November 4, 2013, Plaintiff, TQ Delta, LLC, filed complaints for patent infringement of 19 and 23 DSL-related patents against 2Wire, Inc. ("2Wire") and Zhone Technologies, Inc. ("Zhone"), respectively.  On November 20, 2013, TQ DELTA filed amended complaints in both cases, adding five new patents in the 2Wire case and eight new patents in the Zhone case.  On December 9, 2013, TQ DELTA filed a complaint against the ZyXEL parties (collectively "ZyXEL"), alleging that ZyXEL infringes 32 total DSL-related patents.

the structure, function, and operation of the accused products, the identification of software for the accused products, and summary damages information.

- June 2015 – TQ Delta deposed Zhone's, 2Wire, and ZyXEL 30(b)(6) witnesses relating to the identification of sources of proof.

- September 2015 – 2Wire served its preliminary invalidity contentions, with ████████ of claim charts.  Zhone served its preliminary invalidity contentions, amounting to 90 pages of contentions and ████████ of claim charts.  ZyXEL served its preliminary invalidity contentions, along with ████████ of claim charts.

- September 2015 – TQ Delta served supplemental infringement contention charts to provide additional evidence of infringement.  The evidence includes analysis through substantial testing/reverse engineering efforts.

In addition to the foregoing, the parties have exchanged tens of thousands of pages of production documents, and have served and responded to numerous requests for the production of documents, interrogatories, and requests for admission.  McAndrews has been lead trial counsel for TQ Delta with primary responsibility for the substantive patent issues in these cases from their inception.

**C.    In 2013, Broadcom Learned of McAndrews Work For TQ Delta on The Present Litigation Adverse to Broadcom**

In November 2013, just eleven days after TQ Delta filed the original complaints identifying McAndrews as TQ Delta's counsel of record, ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████ **On November 15, 2013**,

████████████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

(McAndrews Decl., Ex. A (all emphasis herein is added unless otherwise indicated).)   While Broadcom continued its dialogue with ████████ regarding an alleged conflict over a period of several months, Broadcom gave no indication that it objected to McAndrews' representation of TQ Delta.  In fact, Broadcom's current litigation counsel, ████████ copied McAndrews attorney, Peter McAndrews, on a March 6, 2014 letter[2] to ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ (McAndrews Decl., Ex. B.)  Ms. Tessar did not, however, raise any objection to McAndrews' involvement in these cases at that time.

████████████ believed he had no disqualifying conflict, but ultimately withdrew voluntarily to avoid the distraction and expense of a disqualification fight. When ████████ stepped aside, Broadcom did not pursue any claim of conflict against McAndrews despite being well aware of TQ Delta's adverse claims and McAndrews' role as TQ Delta's lead counsel.

Broadcom was also long aware that its DSL product information was being produced to McAndrews in connection with these lawsuits.  On July 24, 2014, ████████

████████████████████████████████████████████████████

████████████████ (McAndrews Decl., Ex. C.) ████████████ confirming it knew of McAndrews' involvement in this litigation, and that its DSL products were implicated,

---

[2] Broadcom's letter of March 6, 2014 (McAndrews Decl. Ex. B) referenced previous Broadcom letters dated November 15, 2013, December 13, 2013, and January 9, 2014 that addressed the same concerns.

without raising any conflict concerns.

Broadcom even participated in the present actions through its current litigation counsel, Ms. Tessar, who has appeared of record.  (McAndrews Decl., Ex. D.)  Broadcom sought to address issues pertaining to the production of Broadcom information made available to the Defendants through a Broadcom customer web-portal.  McAndrews requested a discovery conference on behalf of TQ Delta and submitted a letter to the Court on August 25, 2015. Broadcom submitted a letter to the Court on August 26, 2015 stating its position that the Defendants are not permitted to produce relevant DSL-chip information, even though Broadcom provided the Defendants ready access to those documents.  (McAndrews Decl., Ex. E.)  Notably, Broadcom argued that TQ Delta should have sought the DSL-chip information directly from Broadcom:

> TQ Delta has never served a subpoena on Broadcom. TQ Delta has never even contacted Broadcom informally to discuss the scope of any document request. If Broadcom was to receive a subpoena in these cases, Rule 45 would protect Broadcom from overbroad requests for irrelevant documentation (including fishing expeditions), as well as harassing and/or burdensome requests.

(*Id*.)  While Broadcom invited McAndrews to seek discovery of it via subpoena, it did not assert that McAndrews had a disqualifying conflict.

### D.    Broadcom Now Erroneously Asserts That Some Non-Specific Conflict Should Deprive TQ Delta of Its Chosen Counsel

On October 16, 2015, McAndrews asked Broadcom's counsel to accept service of a subpoena directed to Broadcom. On October 19, 2015, almost two years after learning that McAndrews represented TQ Delta in these matters, Broadcom's counsel first expressed reservations about McAndrews' involvement for TQ Delta. (McAndrews Decl., Ex. F.)  As support for this concern, Broadcom's counsel sent a letter on November 3, 2015, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███ (McAndrews Decl., Ex. G.)   McAndrews responded, explaining the patent was not relevant to this matter, and also that the firm did not believe it had a conflict:

██████████████████████████████████████

(McAndrews Decl., Ex. H.)  McAndrews also asked for further details, advising that ████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████ (*Id.*)

When McAndrews notified Broadcom of these additional facts and explained McAndrews did not have a conflict, Broadcom initially dragged its heels before responding. When Broadcom's counsel eventually responded with a letter dated December 15, 2015, its counsel did not try to argue that the previously identified patent ████████████████

███████████████████████████████████

████████████████████████ (McAndrews Decl., Ex. I.)   Instead, Broadcom's counsel made a very broad-based attack, emphasizing the general scope of work McAndrews had done for Broadcom, not any specific facts that suggested a specific disqualifying conflict in this case.

Broadcom's counsel apparently also conducted a word-search of the USPTO database for combinations of the word "DSL" and "McAndrews," and came up with about ████ patents and applications where both terms appeared. (McAndrews Decl., Ex. I.) ████████████████

████████████████████████████████████████████

████████████████████████████████████████   ████

Broadcom's counsel emphasized the total amount of fees Broadcom had paid McAndrews during the former engagement, and listed (current and former) McAndrews lawyers who had billed Broadcom for that work. (*Id.*)   The obvious problem with such a scatter-shot, perfunctory approach is that it necessarily encompassed work on drastically different technologies, i.e., subject matters that are indifferent to DSL, and it sweeps in matters that are simply not related to the technologies of the asserted patents.   Beyond its broad, unfocused allegations, Broadcom has not identified any relevant, confidential and detrimental information relating to the matters at issue that that McAndrews received or otherwise demonstrated that McAndrews should be disqualified in this matter.

**III.     ARGUMENT**

      **A.     This Court May Determine There is No Disqualifying Conflict**

      TQ Delta moves for an order that the McAndrews firm may proceed in this case notwithstanding any asserted conflict. This Court has the inherent power to determine whether a disqualifying conflict exists. *Air Products & Chemicals, Inc. v. Airgas, Inc*., No. 5249-CC, 2010 Del. Ch. LEXIS 35 (Del. Ch. Ct. Mar. 5, 2010); *Sonos, Inc. v. D&M Holdings, Inc.*, 2015 U.S. Dist. LEXIS 119718 (D. Del. Sept. 9, 2015) ("This Court has summarized the relevant legal principles for determining a motion to disqualify:   The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation."); *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, No. 4:06-CV-316-Y, 2010 U.S. Dist. LEXIS 30358 (N.D. Tex. March 25, 2010). Moreover, any subpoena to Broadcom in connection with any of the above cases must issue from

this Court.  *See* Fed. R. Civ. P. 45(a)(1)( 2) ("A subpoena must issue from the court where the action is pending.").  This is, therefore, the proper court to resolve this issue.

## B.  Disqualification Is Generally Disfavored as a "Drastic Measure"

Efforts to disqualify counsel are "generally disfavored" because they deprive a party of its chosen counsel. *Sonos, Inc. v. D & M Holdings Inc.*, C.A. No. 14-1330-RGA, 2015 U.S. Dist. LEXIS 119718, at *4 (D. Del. Sept. 9, 2015) (citation omitted).  The party seeking disqualification must "show clearly that 'continued representation would be impermissible.'" *Id.* "Disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Thorner v. Sony Computer Entertainment America, Inc.*, C.A. No. 09-1 894-GEB, 2009 U.S. Dist. LEXIS 108422, at *16 (D.N.J. Nov. 20, 2009) (quot. omitted).

Courts approach efforts to disqualify counsel with "'cautious scrutiny,' mindful of a litigant's right to the counsel of its choice."  *Walker Digital, LLC v. Axis Communications AB, Axis Communications, Inc. and On–Net Surveillance Systems, Inc*., C.A. No. 1:11-cv-558-RGA, 2012 U.S. Dist. LEXIS 166280, at *8 (D. Del. Nov. 21, 2012) (citations omitted).  A party's right to counsel of its choice is an important countervailing policy to disqualification and is "entitled to substantial deference." *Rohm & Haas* v. A*m. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001) (citations omitted).

The Court should be mindful that motions for disqualification are often merely a "tactical" maneuver, intended only to harass or delay. *See Richardson-Merrell, Inc.* v. *Koller,* 472 U.S. 424, 436 (U.S. 1985) ("we share the Court of Appeals concern about 'tactical use of disqualification motions' to harass opposing counsel"); *see also Carlyle Towers Cond'm Ass.* v. *Crossland Savings, FSB,* 944 F. Supp. 341 (D.N.J. 1996) ("courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect, the opposite effect is just as likely-- encouragement of vexatious tactics").

Efforts to disqualify counsel are also treated cautiously by courts because such motions "have increasingly been used as one weapon in the litigation arsenal." *Id.* The party seeking disqualification must therefore "**clearly show** that a substantial relationship exists such that the continued representation is impermissible." *Reliant Pharmaceuticals, Inc. v. Par Pharmaceutical, Inc.*, C.A. No. 06-774-JJF, 2008 U.S. Dist. LEXIS 33461, at *6 (D. Del. Apr. 23, 2008).

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,* 632 F. Supp. 418, 428 (D. Del. 1986). The Third Circuit indicated that it had "often employed a balancing test in determining the appropriateness of disqualification of an attorney." *In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 162 (3d Cir.1984).

Even if a conflict of interest is found to exist, however, "[w]aiver is a valid basis for denial of a motion to disqualify." *Conley v. Chaffinch*, 431 F. Supp. 2d 494 (D. Del. May 17, 2006). "[A] finding [of waiver] is justified . . . when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity." *Javorski v. Nationwide Mutual Insurance Co.*, C.A. 3:06-CV-1071, 2006 U.S. Dist. LEXIS 81490 (M.D. Pa. Nov. 6, 2006). "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *SEC v. Tang*, 831 F.Supp. 2d 1130, 1144 (N.D. Cal. 2011). *See also In re Nat' I Century Fin. Enters., Inc.*, No. 2:03-md-1565, 2010 U.S. Dist. LEXIS 39524, at *41 (S.D. Ohio Mar. 29, 2010) ("If [the movant] had genuine concerns regarding whether confidences would be shared with plaintiffs' counsel, it would have acted immediately. No reasonable

person would have waited [five months]").

### C. Having Waited Two Years to Raise the Issue, Broadcom Waived Any Alleged Conflict

Given its lengthy delay, Broadcom has waived any argument that TQ Delta should be deprived of its choice of counsel in this matter. The first factor that courts consider in determining waiver of a right to move for disqualification is "the length of the delay in bringing the motion to disqualify." *Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, C.A. No. 3:08-92, 2012 U.S. Dist. LEXIS 12881, at *6 (W.D. Pa. Feb. 2, 2012); *Conley*, *supra*. In doing so, the start of the delay is when the allegedly aggrieved party first learned of the perceived conflict. *Sauer Inc.*, 2012 U.S. Dist. LEXIS 12881, at *6 (W.D. Pa. Feb. 2, 2012).

Delays, even of a few months, often cause courts to reject efforts to disqualify counsel. For example, this Court denied a motion to disqualify based on waiver after a delay in filing the motion of "almost nine months." *Conley*, 431 F. Supp. 2d at 499. Similarly, the Western District of Pennsylvania denied a motion to disqualify due to waiver after a delay of just over nine months, finding that "[s]uch a lengthy delay is sufficient to justify a finding of waiver." *Sauer Inc.*, 2012 U.S. Dist. LEXIS 12881, at *7 (W.D. Pa. Feb. 2, 2012); *see also Liberate Technologies, LLC v. Worldgate Communications, Inc.*, 133 F. Supp. 2d 357, 359 (D. Del. 2001) (among other reasons, "because [the movant] waited several months to bring this issue to the court's attention despite ongoing settlement talks, the court deems any conflict in this instance to be waived."); *In re Nat' I Century Fin. Enters., Inc.*, *supra* (waiver in view of five-month delay).

Broadcom learned of McAndrew's representation of TQ Delta adverse to Broadcom and its customers more than two years ago—within two weeks of TQ Delta and McAndrews filing the initial complaints. The first of the series of complaints was filed on November 4, 2013. Each of the complaints in this action identify both the McAndrews firm and the infringement



allegations against Broadcom's customers' manufacture and sale of DSL equipment.  Beginning just eleven days after the first complaint, Broadcom sent letters to ████████████████████ ███████████████████ who was then representing TQ Delta as outside licensing counsel. Broadcom's letters expressed its concerns with respect to ████████████████████ ████████████████████████████████ (McAndrews Decl., Ex. A)  Undoubtedly, Broadcom was closely following the just-filed complaints and understood that McAndrews was TQ Delta's trial counsel. Indeed, more than twenty-two months ago, Broadcom's counsel ████ ██████████████████████████████████████████████████████████ ████████████████████████████████ (McAndrews Decl., Ex. B.)

As noted above, courts routinely deny motions to disqualify due to waiver when a party fails to file such a motion after much shorter delays than is present in this case. Broadcom cannot dispute that it knew of McAndrews' involvement in this case, and its representation of TQ Delta adverse to Broadcom and its customers, for most of two years before raising an objection. Accordingly, Broadcom waived any conflict claim it might otherwise have had, and TQ Delta should be allowed to continue employing McAndrews on these matters.

In determining whether a party has waived its disqualification argument, courts also consider "whether the movant was represented by counsel during the delay." *Conley*, 431 F. Supp. 2d at 499.  Here, Broadcom was represented by counsel at all times during its two year delay.  Broadcom's ██████████████ letter to TQ Delta's licensing attorney was signed by Broadcom's ██████████████████████████████████████ (McAndrews Decl., Ex. A.)  Similarly, the letter to TQ Delta's licensing attorney dated ████████████████ and copied to Peter McAndrews, was written ██████████████████████████████ (*Id.*, Ex. B.)   In that letter, ██████████████████████████████████████████████

12

██████████████████████████████████████████████████████████

███████████████████████████████ Notably the letter is **<u>silent</u>** about any objection to the McAndrews firm or to Mr. McAndrews, who was copied on the letter. (*Id.*)

Courts also consider "why the delay occurred . . . ." *Conley,* 431 F. Supp. 2d at 499. Broadcom's recent correspondence suggests Broadcom may try to claim that it did not initially understand that its products were implicated in this dispute.   At best, such an argument lacks credibility.   It is flatly inconsistent with its unambiguous assertion, over two years ago, that ███ █████████ acting for TQ Delta on the very same matters as McAndrews, was in direct adversity with Broadcom.   (*See, e.g.,* McAndrews Decl., Ex. A ███████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

Additionally, Broadcom's position is nonsensical.   A standard cannot infringe a patent in the abstract. Rather, only the implementation of a standard in a device can infringe a patent. Thus, Broadcom knew that implementation was an issue, and that its DSL chip implementations would necessarily place Broadcom's interests adverse to those of TQ Delta, McAndrews' client.

Broadcom has thus failed to explain away its two-year-plus delay. Even if there were a disqualifying conflict (as discussed below, there is not) Broadcom waived it; TQ Delta should be able to keep McAndrews as its counsel of choice for these matters.

### D.    There is <u>No</u> Substantial Relationship Between the Present and Former Representations

Further, McAndrews has acted in conformity with the applicable rules of professional conduct.  These rules allow a law firm to undertake a representation adverse to a former client as long as the matter is not the "same or substantially related" to matters handled for that former client.

To obtain disqualification, Broadcom would ultimately need to prove a violation of an applicable conflict of interest rule. The relevant rule here is ABA Model Rule of Professional Conduct ("MRPC") 1.9(a). (McAndrews Decl., Ex. I (Dec. 15, 2015 letter) at 2.)[3]  Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person *in the same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

A violation of Rule 1.9 requires proof of four elements: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Walker Digital*, *supra* at *5.

"Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9 cmt [2]. To determine

---

[3] The District of Delaware has adopted the Model Rules of Professional Conduct.  *See* D. Del. LR 83.6(d)(2).

whether a current matter is "substantially related," the court is to consider three factors:

> (1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action?  In particular, could any such confidences be detrimental to the former client in the current litigation?"

*Walker Digital*, *supra* at *2. In determining whether a "substantial relationship" exists, one can consider "whether the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Walker Digital, supra* at *6.

A review of the facts shows that there is no substantial relationship between the former representation and current action.  In fact, Broadcom's arguments—which rest  almost entirely on broad brushstrokes and generalities—tacitly admit this.  Broadcom's reliance on the amount of fees paid and the number of timekeepers is irrelevant and fails to meet its burden to show a specific conflict.  For example, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████  Numerous McAndrews timekeepers worked on these cases and substantial fees were billed.  This, however, does not evidence a conflict under Rule 1.9.  Not surprisingly, Broadcom cites no authority to that end.  The law is clear.  Whether disqualification is appropriate "necessarily involves 'a painstaking analysis of the facts.'"   *Walker Digital*, *supra* at *8.

When pressed for the specific basis for the alleged substantial relationship between the former representation and the current action, Broadcom again fell back to generalities, broad statements, and unspecific claims. Broadcom's counsel apparently performed a word-search

from the USPTO database, seeking combinations for "McAndrews" and the word "DSL." The obvious problem with such a perfunctory approach is that it necessarily encompasses drastically different subject matters that can be used with any number of wireline and/or wireless communications, i.e., subject matters that are *indifferent* to DSL, and in any case, are not substantially related to the matters at issue in the current action.

One factor to assess whether a "substantial relationship" exists between current and prior representations "queries whether, during the prior representation, might the client have disclosed confidences to his attorney which could be relevant to the current action and detrimental to the former client." *Talecris*, 491 F. Supp. 2d at 515. In analyzing this factor, "the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Id.* (*citing INA Underwriters* v. *Nalibotsky*, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984). Furthermore, "[v]ague and unsupported allegations are not sufficient" to establish a likelihood that relevant, confidential and detrimental information was disclosed during the prior representation. *Talecris*, 491 F. Supp. 2d at 515, n. 2.

Here, Broadcom's assertions fail to carry the "heavy burden" it would face to show that any (unidentified) McAndrews lawyer likely learned relevant, confidential and detrimental information during his prior representation of Broadcom.

The evidence is as follows:

- **There is no overlap between the two representations**. Broadcom does not – and cannot – argue that McAndrews represented Broadcom in any capacity with respect to the patents-in-suit.

- **There is no showing that the former representation involved any of the DSL**

**technology at issue**.  In patents turned up by the word search, while "DSL" may be mentioned, it is typically included in a laundry list of other wired and/or wireless communication means, even though the disclosed subject matter is *indifferent* to DSL.

- **The amount of fees billed and the number of timekeepers, in the course of prior work, are  irrelevant** to whether the prior scope and nature of the representations are "substantially related."

- **Knowledge of general litigation strategies is also irrelevant**.  *See Sonos, Inc.*, 2015 U.S. Dist. LEXIS 119718 at *12 ("At most, Defendants disclosed their general strategy for handling patent litigation, which is not enough to warrant disqualification.").  And, to the extent Broadcom argues relevance of generalized knowledge, the Broadcom attorneys who managed McAndrews' litigations are no longer with Broadcom.  (McAndrews Decl., ¶ 12.)

- **There is no showing that any McAndrews attorney received relevant, confidential and detrimental information relating to the matters at issue**.

In its correspondence, Broadcom asserts that the prior representations are "substantially related" to this case simply by pointing to Broadcom patents filed by McAndrews that include the term "DSL" – without any showing that any such matters have anything to do with the specific DSL technology of the patents-in-suit.  Generic similarities such as "patents" and "the same technology at issue" are routinely rejected by courts as not meeting the substantial relatedness test.  *Walker* Digital, *supra* at *10 ("general confidences … such as general patent prosecution or claim drafting strategies, such confidences are not relevant to this action, which involves different patents and a different subject matter ….."); *Biax Corp. v. Fujitsu Computer*

17

*Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007) (representations not substantially related merely because both involved "server architecture"); *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152, at *10 (E.D. Tex. Feb. 23, 2012) (representations not substantially related merely because both involved "computers communicating over a network."); *Moyroud v. Itek Corp.*, 528 F. Supp. 707, 708-709 (S.D. Fla. 1981) (allegations that both cases related to photocopier machines and allegedly same design activities held insufficient).  Broadcom's broad-brush assertions are therefore insufficient to carry its burden.

Broadcom has failed to "clearly show that a substantial relationship exists such that the continued representation is impermissible." *Reliant Pharmaceuticals*, s*upra* at *6*.

**E.     TQ Delta Would be Substantially Prejudiced If its Counsel Was Forced to Withdraw**

Finally, even if in fact there was a disqualifying conflict which has not been waived due to Broadcom's inaction, this Court still should permit McAndrews to represent TQ Delta in this case adverse to Broadcom because of the harm TQ Delta would suffer from McAndrews' disqualification. When considering possible disqualification of counsel, it is proper for the Court to consider the equities. *See, e.g., Corn Derivatives Antitrust Litig.,* 748 F.2d at 162.  One such equitable factor is whether there will be prejudice to the non-moving party if disqualification were ordered.  *Air Products & Chemicals, Inc. v. Airgas, Inc*., No. 5249-CC, 2010 Del. Ch. LEXIS 35, at *10 (Del. Ch. Ct. Mar. 5, 2010).  Here, the prejudice to McAndrews' client TQ Delta – a party wholly innocent to this conflict issue – would be grave, weighing strongly against disqualification.

McAndrews has represented TQ Delta as lead litigation counsel for over two and a half years.  McAndrews' knowledge of the case could not be replaced without extreme delay and

great prejudice and expense to TQ Delta.  More than two years into these litigations, after extensive review and analysis, McAndrews has prepared ████ of pages of infringement contentions, reviewed ██████ of pages of production documents, reviewed over five thousand pages worth of the Defendants' invalidity contentions, taken depositions, engaged technical and damages consultants, and developed a close working relationship with the principals at TQ Delta. The McAndrews trial team knows best what discovery is needed from Broadcom and how that information should be incorporated into the case. Any disruption of this all important attorney-client relationship at this stage of the proceedings would greatly prejudice TQ Delta's ability to prosecute these cases.

Finally, as a matter of equity, the prejudice to TQ Delta is heightened by the fact that Broadcom **knowingly** delayed raising any allegation of conflict for two years.  "**It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right.**" *Tang,* 831 F. Supp. 2d at 1144 (N.D. Cal. 2011). Broadcom sat on its alleged rights, and it is now grossly inequitable to raise its (meritless) conflict of interest position over two years later.

## IV.    CONCLUSION

If Broadcom had genuine concerns about McAndrews' representation of TQ Delta, it should have raised those concerns immediately after McAndrews filed these multiple actions over two years ago.  In any case, Broadcom's general and unsupported assertions fail to carry its "heavy burden" of showing that any (unidentified) McAndrews counsel likely learned relevant, confidential, and detrimental information during his prior representation of Broadcom.  TQ Delta – and McAndrews – therefore respectfully request that the Court order that the McAndrews firm may proceed with its representation of TQ Delta in seeking subpoena discovery from Broadcom

in these cases.


Dated: January 26, 2016                         Respectfully submitted,

                                                FARNAN LLP

                                                /s/ Michael J. Farnan
                                                Brian E. Farnan (Bar No. 4089)
                                                Michael J. Farnan (Bar No. 5165)
                                                919 North Market Street, 12th Floor
                                                Wilmington, Delaware  19801
                                                (302) 777-0300
                                                (302) 777-0301 (Fax)
                                                bfarnan@farnanlaw.com
                                                mfarnan@farnanlaw.com

                                                Peter J. McAndrews (admitted *pro hac vice*)
                                                Timothy J. Malloy (admitted *pro hac vice*)
                                                Thomas J. Wimbiscus (admitted *pro hac vice*)
                                                Sharon A. Hwang (admitted *pro hac vice*)
                                                Paul W. McAndrews(admitted *pro hac vice*)
                                                Anna M. Targowska (admitted *pro hac vice*)
                                                MCANDREWS, HELD & MALLOY, LTD.
                                                500 West Madison Street, 34th Floor
                                                Chicago, Illinois  60661
                                                (312) 775-8000
                                                (312) 775-8100 (Fax)
                                                pmcandrews@mcandrews-ip.com

                                                *Counsel for Plaintiff TQ Delta, LLC*