

Kenneth L. Dorsney
302.888.6855
kdorsney@morrisjames.com

December 15, 2017

**VIA E-FILING & HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street
Unit 9, Room 6325
Wilmington, DE  19801-3555

Re:   *TQ Delta, LLC v. ZyXEL Communications, Inc. et al.* (C.A. No. 13-2013-RGA)

Dear Judge Andrews:

I write on behalf of defendants ZyXEL Communications, Inc. and ZyXEL Communications Corp. (collectively, "ZyXEL") to provide the Court with a supplemental exhibit relevant to their motion for a preliminary injunction, scheduled to be heard on Tuesday, December 19, at 10:00 a.m.

After ZyXEL filed its Reply yesterday, we received today from ZyXEL's solicitors a copy of the attached Approved Judgment, which discusses procedural issues and trial scheduling relevant to ZyXEL's motion.

Counsel for ZyXEL is available at the Court's convenience should the Court have any questions.

Respectfully submitted,

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)

Encl.

cc:  All Counsel of Record (via CM/ECF and email with encl.)



Neutral Citation Number: [2017] EWHC 3305 (Pat)

Case No: HP-2017-000045

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**
**INTELLECTUAL PROPERTY LIST (ChD)**
**PATENTS COURT**

The Rolls Building
7 Rolls Buildings
Fetter Lane
London EC4A 1NL

Date: Tuesday 21st November 2017

**Before**:

**MR. JUSTICE HENRY CARR**

- - - - - - - - - - - - - - - - - - - - -

Between:

| | |
|---|---|
| TQ DELTA, LLC (Organised under the laws of the State of Delaware) | **Claimant** |
| - and - | |
| (1) ZYXEL COMMUNICATIONS UK LIMITED (2) ZYXEL COMMUNICATIONS A/S (a company incorporated under the laws of Denmark) | **Defendants** |

- - - - - - - - - - - - - - - - - - - - -

**MR. JOE DELANEY** (instructed by **Gowling WLG**) appeared for the **Claimant**
**MR. THOMAS HINCHLIFFE QC** and **MS. DANIELE SELMI** (instructed by **Pinsent Masons LLP**) appeared for the **Defendants**

- - - - - - - - - - - - - - - - - - - - -

# APPROVED JUDGMENT

*If this Transcript is to be reported or published, there is a requirement to ensure that no reporting restriction will be breached. This is particularly important in relation to any case involving a sexual offence, where the victim is guaranteed lifetime anonymity (Sexual Offences (Amendment) Act 1992), or where an order has been made in relation to a young person.*

*This Transcript is Crown Copyright.  It may not be reproduced in whole or in part other than in accordance with relevant licence or with the express consent of the Authority.  All rights are reserved.*

Digital Transcription by Marten Walsh Cherer Ltd.,
1st Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP.
Telephone No: 020 7067 2900. Fax No: 020 7831 6864 DX 410 LDE
Email: info@martenwalshcherer.com
Web: www.martenwalshcherer.com

**MR. JUSTICE HENRY CARR:**

1. This is the first case management conference in a patent action involving two patents which, according to the Claimant ("TQ Delta") are "essential" in that the relevant Recommendations cannot be practiced without infringement of the patents. The actions involve, as is normally the case, technical issues of validity and infringement and whether the patents are in fact essential, as well as non-technical issues which in these proceedings have been referred to as "reasonable and non-discriminatory licences and remedies" ("RAND").

2. The parties are agreed that the issues relating to validity and infringement of the patents should be tried separately from, and before, the non-technical trial relating to RAND. It has become the practice in this jurisdiction that FRAND trials should come after technical trials. It is a practice that may need to be reviewed following the recent jurisprudence of the Court of Justice in *Huawei Technologies* (C-176/13) and the judgment of Birss J in *Unwired Planet* v. *Huawei* [2017] EWHC 2988 (Pat). If the real dispute between the parties is the issue of a global licence for a global portfolio, it is worth considering whether it makes sense to allow one or more technical trials to take place, as a peg on which to hang the non-technical trial, or whether it would be better case management for the non-technical trial to come first. If the FRAND trial is heard first, and a defendant wishes to say that it does not need to take any licence under any of the patents, the defendant is not compelled to take the licence, and may take the chance that it will subsequently be injuncted in infringement proceedings. But this is not the occasion to rule upon this question, as the parties have accepted that the technical trial should come first.

3. The first issue before me is whether the technical trial of the two patents should be heard sequentially in two five-day trials or together in one 10-day trial. The second issue is whether the non-technical trial should be listed at this case management conference, to be heard after the technical trial, and suitable directions given, or whether all steps in the non-technical trial should be stayed, at least until judgment in the technical trials.

4. The background to this case is typical of cases in this field. The patents in suit are just two of TQD's patents from within a substantial portfolio of patents which are DSL related, which it acquired from a company known as Aware Inc. in 2012. DSL technologies are those commonly used to provide fixed line broadband internet to residential and commercial premises. DSL technology is prescribed by internationally recognised technical standards which allow for interoperability between DSL products. The standards relevant to this dispute are known as ITU recommendations.

5. The Defendants are part of the world wide Zyxel group of companies which is responsible for manufacturing and selling various types of DSL compliant equipment. Because the patents have been declared essential to the implementation of certain ITU Recommendations, in accordance with ITU policy, TQD is required to license the patent on a RAND basis.

6. TQD complains that it has been trying to licence the Zyxel group on a RAND basis for over four years but without success. It says that it made an offer on 26th May 2016 for a global portfolio licence on RAND terms, which was rejected. The Defendants say that they have made a RAND offer for a global portfolio licence which has also been rejected.

7. TQD complains that the over-arching strategy of the Zyxel group is to avoid progressing negotiations and to delay litigation for as long as possible, thereby avoiding any payment to TQD, whilst continuing to infringe TQD's patents by dealing in DSL-compliant equipment. It complains that, despite years of sales and years of litigation, it has not been paid any royalties while the defendants continue to make profits from infringing sales.

8. It is not the purpose of this judgment to express a view on whether the defendants are pursuing a "hold out" strategy, where a potential licensee postpones for as long as possible any payment because it wants to hang on to its money and exhaust the resources and will of the opposite party. If, however, that is the case, then the defendants are at risk, if they are unsuccessful in either of the technical trials, that an injunction will be granted, as was indeed the case in *Unwired Planet* v. *Huawei*.

9. Turning to the first issue, in my judgment, balancing the interests of both parties, I consider that the technical trial of both patents should be heard together within a five-day window in October 2018. This is slightly later than I would have wished. The proceedings were issued in July 2017 and, all things being equal, I would have preferred a trial in July 2018, a year later. However, these proceedings are complicated by possible experiments, which may prolong the trial timetable, and I am conscious that the defendants need adequate time to prepare for what will be a complicated and important trial for them. Therefore, I do not accept Mr. Delaney's suggestion that in this case I should split the two trials and have one trial heard in July and the other in October. I think there may be some modest saving of cost and time by having them heard together, and I think that October is the appropriate time for both trials to be heard.

10. The next question is whether I should stay the non-technical trial or allow it to go ahead and order directions for that trial. I have decided that I should allow the non-technical trial to go ahead. This was that the course that was taken in *Unwired Planet* v. *Huawei*. The object of these proceedings, from the Claimant's perspective, is to obtain appropriate relief by way of injunction and/or financial compensation. The longer that that is postponed, the longer that the object of these proceedings is frustrated.

11. I consider that the non-technical trial should take place as soon as possible after the result of the technical trial. That will, of course, need to be reviewed and Mr. Delaney has indicated that his clients would wish for the non-technical trial to take place even if both patents are found to be invalid. I say nothing about whether that would be appropriate on this occasion.

12. I have reached the conclusion that the appropriate course is to order the non-technical trial to take place with an estimate of 10 days in January 2019.

- - - - - - - - - -