

David A. White
Partner
T. 302-984-6370
F. 302-691-1136
dwhite@mccarter.com

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

January 31, 2018

**VIA ELECTRONIC DELIVERY**

| | |
|---|---|
| Kenneth L. Dorsney, Esq. | Michael J. Farnan, Esq. |
| Morris James LLP | Farnan LLP |
| 500 Delaware Avenue, Suite 1500 | 919 North Market Street, 12th Floor |
| Wilmington, Delaware 19801 | Wilmington, Delaware 19801 |
| | |
| Ross R. Barton, Esq. | Peter J. McAndrews, Esq. |
| Elizabeth H. Rader, Esq. | Thomas J. Wimbiscus, Esq. |
| Alston & Bird, LLP | McAndrews, Held & Malloy, Ltd. |
| 950 F Street NW | 500 West Madison Street, 34th Floor |
| Washington, D.C. 20004 | Chicago, Illinois 60661 |

Re:  *TQ Delta, LLC v. Zyxel Communications, Inc., et al.*
     C.A. No. 13-2013-RGA

Dear Counsel:

This letter shall serve as my decision and order concerning Defendants' Motion to Compel Production of Documents and Responses to Interrogatories (the "Motion").[1]

## BACKGROUND

On December 9, 2013, Plaintiff TQ Delta, LLC ("TQ Delta") filed suit against Defendants ZyXEL Communications, Inc. and ZyXEL Communications Corporation (collectively, "Zyxel") in the United States District Court for the District of Delaware (the "Complaint").[2]  TQ Delta seeks an award of declaratory relief and monetary damages arising out of Zyxel's alleged infringement of a number of patents relating to digital subscriber line technology (collectively, the "Patents").[3]  TQ Delta acquired the Patents from Aware, Inc. ("Aware") pursuant to the Patent Purchase Agreement (the "Agreement").

Zyxel served TQ Delta with a set of interrogatories and requests for production of documents (collectively, the "Discovery Requests").  TQ Delta objected to the Discovery Requests on numerous grounds.  The parties' attempt to meet and confer was unsuccessful and Zyxel contacted the Special Master to request a teleconference.  The Special Master held a teleconference to discuss the discovery dispute in general terms, and the

January 31, 2018
Page 2

parties were instructed to discuss the dispute in greater detail to see if they could narrow the scope of the disagreement. The parties were unable to resolve the dispute, and they submitted letter briefs to the Special Master in support of their respective positions.

On January 9, 2018, the Special Master held oral argument on the Motion.[4] The Special Master reserved judgment, and the following shall serve as his decision and order on the Motion.

## ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..."[5] Proportionality is the standard, as mandated by the recent revisions to Federal Rule 26(b)(1), which require consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[6] The United States District Court for the District of Delaware has written on the topic of proportionality in recent years, and the Court has explained that it must "evaluate the parties' arguments for or against the requested production on the bases of the production sought, the other production to date, the degree of the requested production's relevance, and the burdens imposed on the party from whom the production is requested."[7]

Federal Rule of Civil Procedure 37 permits a party to "move for an order compelling disclosure or discovery."[8] "Generally, a party moving to compel discovery bears the burden of demonstrating the relevance of the requested information."[9] "It is [the moving party's] burden to show how discovery ... is proportional to the needs of the case."[10] Further, "[t]he parties and the court have a collective responsible to consider the proportionality of all discovery and consider it in resolving discovery disputes."[11]

### B. Requests for the Production of Documents

Zyxel seeks the entry of an order compelling TQ Delta to produce non-privileged documents that are responsive to three categories of Requests: (1) legal standing; (2) draft agreements; and (3) communications with Aware.

ME1 26454779v.3

January 31, 2018
Page 3

Further, Zyxel seeks the production of certain responsive documents without redactions.

### 1. Legal Standing

Zyxel seeks the production of non-privileged documents responsive to the following requests on the basis that such documents are relevant to the issue of standing. "A patentee shall have remedy by civil action for infringement of his patent."[12] For purposes of evaluating standing, a patentee must possess all substantial rights in the patent at-suit.[13] The courts may consider a non-exhaustive list of factors, including, but not limited to whether the plaintiff possesses the exclusive right to make, use and/or sell the patent and the scope of the plaintiff's authority to sue accused infringers and/or license the patent.[14]

Zyxel has not put forth any evidence or proof to justify the production of the type or quantity of the documents sought. Zyxel, in fact, admits that it does not know whether legal standing is even an issue.[15] While the Court understands that Zyxel may be limited in its ability to offer evidence or proof in support of its request at this juncture, the requesting party bears the burden of showing good cause before the respondent must expend time and money to search for responsive documents. Zyxel did not refer to sections of the Patent Purchase Agreement,[16] the existing document production or publicly-available information to suggest that TQ Delta possesses less than all substantial rights in the Patents. Rather, its argument is speculative and conjectural. Zyxel also suggests that TQ Delta should produce the requested documents and subsequently move *in limine* to exclude the admission of such documents at trial, if appropriate.[17] While a motion *in limine* may have been an appropriate check on broad-sweeping discovery in previous years, recent amendments to Federal Rule 26 reflect a significant change. Discovery is no longer measured by whether it is reasonably calculated to lead to the discovery of admissible evidence. The Federal Rules favor a proportional approach that requires a court to "evaluate the parties' arguments for or against the requested production on the bases of the production sought, the other production to date, the degree of the requested production's relevance, and the burdens imposed on the party from whom the production is requested."[18] In light of the parties' arguments, the Court rules as follows:

> 11. Documents sufficient to show the relationship between TQ Delta and Techquity, LP, Techquity Capital Management, and/or TQCAP.

January 31, 2018
Page 4

Aware conveyed its rights to the Patents to TQ Delta through the Agreement. The signature block indicates that TQCAP GP, LLC executed the agreement on behalf of TQ Delta in its capacity as "general partner."[19] TQCAP GP, LLC's involvement is not surprising in light of its position as managing member of TQ Delta.[20] The signature block also references an entity named "Techquity, LP, its member."[21] The reason for Techquity, LP's inclusion on the signature block is not currently known.

Zyxel seeks the production of documents concerning "the nature of the relationship between TQ Delta and the various entities that either own or are affiliated with it, and the extent to which they or their investors have the ability to control TQ Delta's actions in connection with this lawsuit."[22] However, the focus is on TQ Delta and whether it possesses all substantial rights in the Patents.[23] The Agreement purports to sell, convey and/or transfer all substantial rights in the Patents to TQ Delta.[24] Zyxel has not referred to evidence in the record to indicate otherwise.[25]

Zyxel also has not cited to legal authority for the proposition that a court must look beyond legal title to the patent and engage in a quasi-veil piercing to understand how the owner of the patent exercises its right to enforce the patent. The fact is that TQ Delta is a limited liability company formed and existing under the laws of the State of Delaware. A corporate entity does not draft documents, weigh considerations, or make decisions. People perform these tasks on behalf of the corporate entity, and the fact that a person undertakes tasks relevant to the license or enforcement of a patent does not cause the individual to become the party-in-interest with legal standing to sue.

To the extent that Zyxel seeks the production of a corporate or organizational chart, TQ Delta represents that no such chart exists. Federal Rule 34 requires a responding party to produce all non-privileged, responsive documents in its possession, custody, or control.[26] The Federal Rules are silent as to a responding party's obligation to create or prepare documents that may be responsive to a request, and the Court is not inclined to impose such duty in the absence of legal precedent. Fortunately, the Federal Rules provide other avenues for ascertaining the requested information.[27]

12. Documents sufficient to show formation or incorporation of TQ Delta.

TQ Delta has produced its limited liability company agreement, which is directly responsive to Request No. 12, and thus, the issue is moot. To the

January 31, 2018
Page 5

extent that Zyxel seeks additional documents responsive to Request No. 12, the Court fails to see how the request, as currently written, supports such position and sustains TQ Delta's objection to Request No. 12 as vague, ambiguous, overly broad, and unduly burdensome.

> 21. Documents, agreement and things related to the ownership of or any interest in the Asserted Patents, including transfers of title, assignments or obligations to assigns, joint ownership, mortgage rights, liens, or security interest.

TQ Delta has produced the Agreement, the assignments of the Patents, the formation agreement for TQ Delta and TQCAP GP, LLC, and a copy of all fully-executed licenses.[28]  Further, TQ Delta has produced agreements with individuals who possess a financial interest in the outcome of the litigation.[29] Because Zyxel does not dispute the validity of the Agreement or otherwise put forth a colorable argument challenging TQ Delta's authority to pursue this action, the Court sustains TQ Delta's objection to Request No. 34 as overly broad, unduly burdensome, duplicative, and disproportionate.

### 2. Draft Agreements

Zyxel seeks the production of documents related to the licensing of the Patents, including, but not limited to offers to license the Patents, evidence of negotiations, and draft license agreements.  Zyxel contends that the requested information is relevant to the second *Georgia Pacific* factor concerning "the rates paid by the licensee for the use of other patents comparable to the patent in suit."[30]  TQ Delta objects to the production of such materials as irrelevant and on the basis that the production of these materials could have a chilling effect on negotiations.

The Court entered an order in a parallel action involving TQ Delta, which discussed the production of the type of documents sought by Zyxel in this action (the "2Wire Order").[31]  The Court explained:[32]

> This request seeks the production of all demand letters, claim charts, draft licenses, licenses, settlement agreements, and consent judgments that relate to the Asserted TQ Delta Patents.  2Wire maintains that these documents are relevant to the issues of damages.  TQ Delta objects to the production of such documents, particularly those documents that are subject to current or ongoing settlement negotiations.

> After careful consideration, the Court orders TQ Delta to produce all claim charts, executed licenses, executed settlement agreements, and court-approved consent judgments related to the Patents.  TQ Delta is also ordered to produce demand letters

January 31, 2018
Page 6

exchanged in those matters that resulted in a fully-executed settlement agreement. These materials strike the appropriate balancing of interests necessitated by Federal Rule 26(b)(1).

For the avoidance of doubt, TQ Delta shall not be compelled to produce the drafts of any demand letters, claim charts, licenses, settlement agreements, or consent judgments.[1] Both parties submitted limited case law concerning the discovery of materials related to settlement negotiations. Neither side supplied precedent from the District of Delaware nor legal authority that post-dated the amendments to Federal Rule 26(b)(1). The Court, however, found Magistrate Judge Thynge's memorandum order in *Block Drug Co., Inc. v. Sedona Labs., Inc., et al.*, No. Civ. A. 06-350, 2007 WL 1183828 (D. Del. Apr. 19, 2007), which denied, in large part, the movant's request for the production of two (2) fully-executed settlement agreements. *See id.* at *2. While Magistrate Judge Thynge acknowledged the broad scope of Federal Rule 26(b), she implicitly recognized a heightened standard for the discovery of settlement materials that reflected "the strong public policy favoring settlement and to promote that policy." *Id.* at *1 ("The court does not find that that showing has been made by [the movant]."). If the Court was not willing to order the production of fully-executed settlement agreements prior to the amendments to Federal Rule 26(b), it does not now conclude that evidence of settlement negotiations, including draft agreements, would be discoverable in the current era of discovery. Moreover, 2Wire has not put forth a persuasive argument to demonstrate its right to such documents. Finally, the Court finds the legal authority cited in support of TQ Delta's position more credible. *See U.S. v. Am. Soc. of Composers, Authors & Publishers*, No. 13-95, 1996 WL 157523, at * (S.D.N.Y. Apr. 3, 1996) ("We also note that undesirable damage to prospects for voluntary resolution of disputes may occur not merely from receipt into evidence of negotiating statements made by the opposing party ..., but also by disclosure settlement discussions and analyses. ... The potential for such damaging disclosures may ... discourage the parties from venturing into such talks."). Accordingly, the Court sustains TQ Delta's objection as to the remainder of the request.

TQ Delta has not asserted and the Court does not find that the 2Wire Order binds Zyxel in this action. Nevertheless, the Court would be remiss if it did not acknowledge its prior legal analysis on this subject.

Zyxel raises several arguments that were not previously addressed in the 2Wire action. Specifically, Zyxel argues that evidence of settlement negotiations is relevant to the 2nd *Georgia Pacific* factor concerning "the rates paid by the licensee for the use of other patents comparable to the patent in suit."[33] The 2nd *Georgia Pacific* factor concerns "rates paid," as opposed to rates that may be paid, rates that could have been paid, or rates that should have been paid. In the absence of language modifying the 2nd *Georgia Pacific* factor, the Court must conclude that the 2nd *Georgia Pacific* factor

---

[1] The demand letters exchanged in those matters that have not yet resulted in a fully-executed settlement agreement are also excluded from production.

January 31, 2018
Page 7

concerns only those rates that are actually paid.  Thus, Zyxel's argument fails to persuade the Court to deviate from its prior ruling in the 2Wire Order.

> 5. *A copy of any license agreement referring or relating to the Asserted Patent.*

TQ Delta has either produced or agreed to produce a fully-executed copy of all licenses concerning the Patents,[34] and thus, the issue is moot.[35]  For the avoidance of doubt, TQ Delta possesses a continuing obligation to produce a copy of any licenses concerning the Patents that are executed after the entry of this Order in a timely manner.

> 14. *TQ Delta's licenses, offer to assign or license, requested licenses, proposed licenses related to the Asserted Patents, Related Patents, Related Applications, or any negotiations for any assignment, covenant, or license, or discussing or analyzing the costs, benefits, or disadvantages of such assignment, covenant, license, or proposed assignment or license.*

Notwithstanding the 2Wire Order, in which the Court denied the movant's request to compel the production of a number of those documents referenced in Request No. 14, Zyxel seeks the production of documents concerning TQ Delta's efforts to license the Patents.[36]  TQ Delta has produced copies of fully-executed licenses involving Aware and it pledges to produce a fully-executed copy of its license with Zone.[37]  TQ Delta's royalty rate card is also publically available.[38]  TQ Delta, however, refuses to produce documents concerning negotiations on the basis that the information is irrelevant and the production of such documents will have a chilling effect on negotiations.

Zyxel's arguments do not persuade the Court to deviate from its prior ruling in the 2Wire Order.  The discovery of settlement materials triggers a heightened pleading standard that reflects "the strong public policy favoring settlement and to promote that policy."[39]  This heightened standard acknowledges "that undesirable damage to prospects for voluntary resolution of disputes may occur not merely from receipt into evidence of negotiating statements made by the opposing party ..., but also by disclosure settlement discussions and analyses."[40]  In light of this elevated threshold, the Court finds that Zyxel has failed to satisfy its burden and it sustains TQ Delta's objection to the Request.

January 31, 2018
Page 8

In closing, the Court acknowledges that it previously ordered TQ Delta to produce all claim charts, executed licenses, executed settlement agreements, and court-approved consent judgments concerning the relevant patents in the 2Wire Litigation.[41]  The Court also compelled TQ Delta to produce all demand letters in matters that resulted in a fully-executed license, settlement agreement, and/or court-approved consent judgment.[42]  In the interests of fairness, to the extent that these materials exist and they have not been produced, TQ Delta shall produce these types of materials related to the Patents in this action.

> 23. All documents and things related to the DSL Patent Purchase Agreement between Aware and TQ Delta.

Zyxel seeks the production of documents between TQ Delta and Aware related to the valuation and interpretation of the Patents.[43]  The information sought in Request No. 23 is similar to that identified in Request No. 34.  In light of the similarities between Request Nos. 23 and 34, the Court sustains TQ Delta's objection to Request No. 23 on the basis of proportionality, unduly burdensome, and duplicative.

> 30. Documents evidencing any negotiations between TQ Delta and any potential licensee regarding any of the Asserted Patents.

The documents sought in Request No. 30 are included or encompassed within the scope of Request No. 14.  The Court sustains the objection of TQ Delta for the reasons set forth in the Court's analysis of Request No. 14 above.

### 3. Communications with Aware

Zyxel seeks the production of written communications between TQ Delta and Aware concerning the Agreement.[44]  TQ Delta asserts that such communications are protected from disclosure under the common interest privilege.[45]  TQ Delta maintains that the parties possessed a shared legal and commercial interest in the Patents which gives rise to the privilege.[46]

 "The common interest doctrine is the exception to the general rule that the attorney-client privilege is waived following disclosure of privileged materials to a third party."[47]  The party asserting the common interest privilege bears the burden of proof, in which it must show;  "(1) the communications were made in the course of a [common legal interest], (2) the statements were designed to further the effort, and (3) the privilege has not been waived."[48]

January 31, 2018
Page 9

The interests must be "identical, not similar, and be legal, not solely commercial."[49] "In order to give 'sufficient force' to a common interest claim of privilege, there should be a demonstration that 'the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation."[50]

The Court recently examined the common interest privilege in *Del. Display Grp.*, in which Judge Andrews concluded that there was no common interest between the assignor and assignee of a patent to support the existence of the privilege.[51] The Court found that the assignor and assignee possessed a shared interest in a valid and enforceable patent that was commercial in nature.[52] While the assignor maintained a right to royalties following the assignment, "[s]uch economic rights, standing alone, are generally not sufficient to support application of the common interest doctrine."[53]

> 34. Communications relating to agreements and draft agreements between TQ Delta and Aware relating to the Asserted Patents.

TQ Delta and Aware possess a shared interest in the continued enforceability of the Patents[54] This shared interest is predominantly commercial in nature and of the type that Judge Andrews previously rejected in *Del. Display Grp.*[55] TQ Delta maintains that the parties possess a shared legal interest, but such interest relates to the preservation of the commercial benefit to be derived from the Patents.[56]

Turning to the elements of the common interest privilege, TQ Delta has failed to establish that the relevant communications were made in the course of a common legal interest or that such communications were designed to further the common legal interest. First, TQ Delta and Aware were parties on the opposite side of the negotiation table at the time of the relevant communications. While the parties may have a shared interest in the continued enforceability of the Patents, the parties only came to share this interest after the negotiation had concluded and the Agreement was executed. Prior to the execution of the Agreement, each party was focused on extracting the best possible deal, and it stands to reason that questions concerning the enforceability of the Patents, whether true or merely as a negotiating ploy, may have resulted in a reduction in the sale price to the benefit of TQ Delta. Second, TQ Delta failed to show that any communications between the parties furthered a common legal interest. Third, while TQ Delta points to the existence of a common interest agreement as additional proof of the parties' common interest,[57] the mere existence of the agreement is insufficient. Neither the common interest

January 31, 2018
Page 10

agreement nor TQ Delta's submissions reference existing, threatened or anticipated litigation,[58] and thus, there was no legal interest capable of supporting the common interest privilege prior to the execution of the Agreement.[59]  Finally, the record before the Court does not include an executed copy of the common interest agreement.  The common interest agreement, rather, was attached as a schedule to the Agreement which is dated August 22, 2012.  These facts lead the Court to conclude that the parties did not recognize a common interest between them prior to the execution of the Agreement.[60]

During oral argument, the parties discussed whether a privilege log is necessary for the Court to render a decision on the matter.  Zyxel responded in the negative, while TQ Delta suggested that the lack of a privilege log may render the issue not ripe.  A privilege log would certainly assist the Court with identifying those documents that are responsive to the Request.  A privilege log, however, is not necessary to determine whether a common interest privilege exists in principal.  Attorneys for TQ Delta and Aware could have communicated with one another during contract negotiations without involving non-attorneys.  The fact that attorneys communicated directly with one another does not transform a non-privileged communication between adverse parties into a privileged communication.  For the reasons set forth above, the Court finds that a common interest privilege did not exist between TQ Delta and Aware prior to the execution of the Agreement.

Wherefore, the Court orders TQ Delta to produce any communications between Aware and TQ Delta during the negotiation of the Agreement.  Federal Rule 26's emphasis on proportionality compels the Court to limit the response to communications between TQ Delta and Aware concerning the marketing or promotion of the Patents, offers to purchase/sell the Patents, valuations of the Patents, and drafts of the Agreement.  For the avoidance of doubt, the Order does not compel TQ Delta to produce privileged communications that were not shared with third parties.

### 4. Redacted Documents

TQ Delta's document production includes seven (7) documents which have been redacted, including a limited liability company agreement and certain financial statements.[61] TQ Delta produced a redaction log.[62] The redaction log indicates that TQ Delta redacted information in responsive documents on the basis that the redacted information was highly sensitive.[63]  Zyxel challenges the production of these documents in their redacted form.[64]

January 31, 2018
Page 11

"Rule 26 ... allows for two approaches to seeking the protection of sensitive—but relevant—information."[65]  A party may argue that certain information is protected from disclosure as a result of an evidentiary privilege, or in the alternative, seek the entry of a protective order.[66]  "[W]hen a party claims protection from discovery by asserting the existence of an evidentiary privilege, the party seeking such protection bears the burden of establishing the privilege."[67]  A party seeking to withhold documents from discovery on the basis of confidentiality must show that "disclosure will work a clearly defined and serious injury to the party seeking closure."[68]  Broad allegations of harm will not suffice.[69]  "The injury[, rather,] must be shown with specificity."[70]  The United States Third Circuit Court of Appeals has recognized a list of criteria for determining whether the party asserting confidentiality has satisfied its burden, such as whether the disclosure will violate privacy concerns; whether the information is sought for legitimate reasons; whether the disclosure will cause embarrassment; whether the disclosure of information will promote fairness; and whether the case involves issues of public importance.[71]

In *Del. Display Grp.*, the Court rejected a party's attempt to shield information included in royalty reports on the basis that the redacted information was highly confidential.[72]  Judge Andrews found *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) persuasive.  "[Federal] Rule 34 talks about production of 'documents' as opposed to the relevant information contained in those documents."[73]  Where Federal Rule 34 requires the respondent to produce documents in the form that they are kept in the ordinary course, the respondent may not take the additional step of "scrub[bing] responsive documents of non-responsive information."[74]  Consequently, Judge Andrews found that to the extent that the confidentiality order did not provide the requisite protection, the respondent should have sought to modify the order.[75]

In this instance, TQ Delta bears the burden of proving the redactions are necessary to prevent injury.[76]  The Court finds that TQ Delta has failed to carry its burden as to each of the documents identified on the redaction log.  TQ Delta produced these documents in response to a request for production.  TQ Delta redacted these documents to prevent Zyxel from possessing the redacted information.  While TQ Delta may deem the information sensitive or confidential, the protective order governing this litigation is capable of addressing TQ Delta's concerns.  Further, to the extent that TQ Delta finds the redacted information to be irrelevant, the information is included in a document that TQ Delta previously determined to be responsive to an existing document request.[77]  Federal Rule 34 does not obligate TQ Delta to

January 31, 2018
Page 12

produce responsive documents in a redacted form.[78]  Quite the opposite, as Federal Rule 34 requires a respondent to produce responsive documents "as they are kept in the usual course of business ..."[79]

Wherefore, the Court orders TQ Delta to produce each of the documents listed on the redaction log in their unredacted form subject to the protections of the confidentiality order entered in this action.

### C. Joint Interrogatories

Zyxel argues that TQ Delta's response to Interrogatory Nos. 1, 2, and 3 are incomplete.

> 1. *If you contend that any Asserted Patent is not subject to a FRAND obligation, state all facts supporting that contention for each Asserted Patent.*
>
> 2. *For each patent claim identified in Your Initial Claim Chart, (a) state whether you contend that such claim is essential to the implementation of the DSL Standard section identified in the relevant claim chart and (b) state all facts supporting your contention that the patent claim is or is not essential to the implementation of the relevant DSL Standard section.*

The parties dispute whether TQ Delta's response to these Interrogatories is sufficient.  TQ Delta's response to Interrogatory No. 1 references its response to Interrogatory No. 2, which includes a chart identifying the claims that are not standard-essential "and are therefore not FRAND-obligated ..."[80]  Such chart sets forth certain facts underlying TQ Delta's position on the matter.[81]

The Court is satisfied with the level of detail of TQ Delta's responses to Interrogatory Nos. 1 and 2.  While the responses may not be to Zyxel's satisfaction, Zyxel has not persuaded the Court as to how the charts included in TQ Delta's responses are insufficient.  Zyxel possesses the opportunity to test the sufficiency of these responses through future discovery, and motion practice serves as a powerful check on TQ Delta's ability to change course at a future stage of the litigation to Zyxel's detriment.

> 3. *For each Asserted Patent, state the royalty rate that You contend should be paid with respect to any allegedly infringing product.*

January 31, 2018
Page 13

TQ Delta objects to the Interrogatory on the basis that the Interrogatory constitutes expert discovery, which TQ Delta is not required to disclose at this time.[82]  Zyxel has responded that it is "not looking for a full-blown damages analysis[,]"[83] but rather a 'ballpark figure.'[84]  The Court sustains TQ Delta's objection to the Interrogatory on the basis that the Interrogatory seeks expert discovery and is premature.  While Zyxel attempted to limit its request to a less than complete damages analysis, the provision of a 'ballpark figure' at this juncture would nevertheless require TQ Delta to revise its response on a future date and subject its expert to unfair cross-examination.

Very truly yours,,

/s/ *David A. White*
David A. White (DE# 2644)

---

[1] *See* D.I. #417.
[2] *See* D.I. #1.
[3] *See id.*
[4] Oral argument was transcribed (the "Transcript"), and where appropriate, the Special Master has endeavored to cite to the transcript in this decision and order.
[5] FED. R. CIV. P. 26(b)(1).
[6] *Id.*
[7] *AVM Tech., LLC v. Intel Corp.*, Civ. A 15-033-RGA-MPT, 2016 WL 1948872, at *2 (D. Del. May 3, 2016).  *See also Syngenta Corp. Protection, LLC v. Willowood, LLC*, Civ. No. 16-171-RGA, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016).
[8] FED. R. CIV. P. 37(a).
[9] *Novanta Corp. v. Iradion Laser, Inc.,* Civ. A. 15-1033-SLR-SRF, 2016 WL 4987110, at *2 (D. Del. Sept. 16, 2016) (citing *Del. Display Grp LLC v. Lenovo Grp Ltd.,* Civ. A. 13-2108-RGA, 13-2109-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 23, 2016)).
[10] *Id.* at *4.
[11] *Id.* at *2.
[12] *Diamond Coating Tech., LLC v. Hyundai Motor Am., et al.*, 823 F.3d 615, 617 (Fed. Cir. 2016) (quoting 35 U.S.C. § 281) (emphasis omitted).
[13] *See id.* at 618.
[14] *See id.* at 619.
[15] *See* Transcript at 28:4-10.
[16] *See* TQD000001-70.
[17] *See* Transcript at 27.
[18] *See AVM Tech., LLC*, 2016 WL 1948872, at *2.
[19] *See* TQD000010.
[20] *See* TQ Delta Ltr. Br. at p. 1.
[21] *See* TQD000010.
[22] *See* Zyxel Ltr. Br. at pp. 1-2.
[23] *See Diamond Coating Tech., LLC*, 823 F.3d at 618-19.

January 31, 2018
Page 14

---

[24] *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("When a party holds all rights or all substantial rights, it alone has standing to sue for infringement.").
[25] *See* Zyxel Ltr. Br. at p. 1.
[26] *See* FED. R. CIV. P. 34.
[27] *See* FED. R. CIV. P. 26-36.
[28] *See* Transcript at 20:11 – 21:14. *See also* TQD000072-096, TQD036950-037015.
[29] *See* Transcript at 41:9-20, 46:17-22. To the extent that the production of these agreements is not complete or is ongoing, it is the Court's expectation that TQ Delta will continue to produce such agreements in advance of the deposition of any party to such agreement.
[30] *See* Zyxel Ltr. Br. at p. 2 (quoting *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971)).
[31] *See TQ Delta , LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA (D. Del. Sept. 29, 2017), White, S.M. (hereinafter, the "2Wire Order").
[32] *See* 2Wire Order at pp. 7-8.
[33] *See* Zyxel Ltr. Br. at p. 2. *See also Georgia-Pac. Corp.*, 318 F. Supp. at 1120.
[34] Transcript at 67:24 – 68:2.
[35] *Id.* at 57.
[36] *See id.* at 58:2-14.
[37] *See id.* at 67:14 – 68:22.
[38] *Se id.* at 77:3-8.
[39] *Block Drug Co., Inc. v. Sedona Labs., Inc., et al.*, No. Civ. A. 06-350, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007),
[40] *U.S. v. Am. Soc. of Composers, Authors & Publishers*, No. 13-95, 1996 WL 157523 (S.D.N.Y. Apr. 3, 1996)
[41] *See* 2Wire Order at p. 7.
[42] *See id.*
[43] *See* Transcript at p. 59:9-20.
[44] *See id.* at 84:13 – 85:13.
[45] *See id.* at 86:16 – 88:8.
[46] *See Id.* at 87:20-23.
[47] *Leader Tech., Inc. v. Facebook, Inc.*, 719 F.3d 373, 376 (D. Del. 2010).
[48] *Robert Bosch LLC v. Pylon Mfg. Co.*, 263 F.R.D. 142, 146 (D. Del. 2009) (quoting *In the Matter of Bevil, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986)).
[49] *Leader Tech., Inc.*, 719 F.3d at 376.
[50] *Id.*
[51] *Del. Display Grp. LLC*, 2016 WL 720977, at *4-5.
[52] *See id.* at *5.
[53] *Id.* at *3.
[54] *See* TQ Delta Ltr. Br. at p. 6.
[55] *See* 2016 WL 720977, at *4-5.
[56] *See id.* at *3 ("[E]conomic rights, standing alone, are ... not sufficient to support application of the common interest doctrine.").
[57] *See* Transcript at pp. 87:23 – 88:2.
[58] *See id.* at 89:6-10.
[59] *See MobilMedia Ideas, LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012). TQ Delta's reliance on *MobilMedia Ideas LLC* to persuade the Court fails, because Apple

January 31, 2018
Page 15

---

conceded the existence of a common interest privilege in that case. *See* 890 F. Supp. 2d at 518. Zyxel does not make any such concession in this action.

[60] *See Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *5 (Del. Ch. Feb. 2, 2011 ("The existence of a common interest agreement made effective August 12, 2009 suggests that there was no common legal interest between Titan and Context before that date.").

[61] *See* Zyxel Ltr. Br. at Exh. A.

[62] *See id.*

[63] *See id.*

[64] *See* Zyxel Ltr. Br.

[65] *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

[66] *See id.*

[67] *See Del. Display Grp. LLC*, 2016 WL 720977, at *2.

[68] *EEOC v. Kronos, Inc., et al.*, 620 F.3d 287, 302 (3d Cir. 2010).

[69] *See id.*

[70] *Id.*

[71] *See id.*

[72] *See* 2016 WL 720977, at *6 (In the absence of privilege, "a party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant."*).*

[73] *Orion Power Midwest, L.P.,* 2008 WL 4462301 at *2.

[74] *Id.*

[75] *See Del. Display Grp.*, 2016 WL 720977, at *6.

[76] *See Kronos, Inc.*, 620 F.3d at 302.

[77] *See Orion Power Midwest, L.P.*, 2008 WL 4462301, at *2.

[78] *See id.*

[79] Fed. R. Civ. P. 34(E)(i).

[80] Zyxel Ltr. Br. at Exh. 4.

[81] *See* TQ Delta Ltr. Br. at Exh. B, C.

[82] *See* Transcript at p. 147:2-18.

[83] *See id.* at 145:21.

[84] *See id.* at 145:2-7.