IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 13-2013-RGA |
| ZYXEL COMMUNICATIONS INC., et al., | : |
| Defendants. | : |

**DISCOVERY ORDER**

The Special Master made various discovery rulings relating to answering interrogatories and producing documents, embodied in a fifteen-page letter to counsel. (D.I. 470). TQ Delta filed objections (D.I. 492), to which Defendant ZyXEL responded (D.I. 496). I later requested an in camera submission from TQ Delta, which has been provided. (D.I. 532).

I review the rulings *de novo*.

TQ Delta makes two objections.

One. TQ Delta redacted seven documents for reasons unrelated to privilege. TQ Delta decided, based on rulings I had made in other cases, that certain financing information was irrelevant and highly sensitive. The Special Master nevertheless directed the production of the documents in unredacted form. (D.I. 470, pp. 10-12). In doing so, he relied upon a decision of mine on essentially the exact same issue, *see Delaware Display Group LLC v. Lenovo Group Ltd.*, 2016 WL 720977, *5-6 (D.Del. Feb. 23, 2016), and, not unreasonably, followed my lead.

TQ Delta's argument in support of its objection to the Special Master's ruling relies on the assertion that I previously ruled the redacted information irrelevant. But that really does not

distinguish *Delaware Display Group*. I think the logic of *Delaware Display Group* amply supports the Special Master's ruling. Furthermore, what I was doing in the quoted portions of the previous rulings (D.I. 492, pp. 3-5) was to determine whether defendants could require the production of documents where the production was in response to requests for documents relating to irrelevant topics. Here, the documents are relevant to some topic, but not everything in the documents is relevant.

As counsel noted when arguing the case before the Special Master (D.I. 492, Exh. E, Hearing pp. 113-14), I was not entirely happy with the outcome in the earlier case. Thus, I asked for the redacted and unredacted versions of the questioned documents.[1] I have reviewed them. My view is that the redacted information is irrelevant. The redacted information concerns the identity of otherwise unidentified Members of TQ Delta, together with their financial stakes, and how revenues are to be distributed. There is also a document relating to Techquity and its expected revenues. Counsel argued that disclosure of this information could "disrupt" "numerous ongoing licensing negotiations." (*Id.* at 114). Given that the information is covered by a protective order, counsel's argument is unpersuasive. The information cannot be disseminated. Even the redacted versions are categorized as "Highly Confidential – Attorneys' Eyes Only."

Thus, while I again am reluctant to order the production of the unredacted versions of the documents, I will do so. I have one addition to the Special Master's order, which addresses the concern that Defendants will "chill funding by harassing passive third party investors with third party discovery proceedings." (D.I. 492, p.7; D.I. 496, p.3). I doubt this is a realistic possibility,

---

[1] I asked for three of them only, because the Redaction Log makes it appear that five of them were Financial Statements that would present exactly the same issue.

but, just in case, absent my express approval, the third party investors which will be disclosed in the unredacted documents are not to be the subject of any discovery efforts.

TQ Delta's first objection is **OVERRULED**.

Two. TQ Delta objects to the Special Master's ruling on the common interest privilege assertion for documents exchanged with Aware while negotiating the sale of the asserted patents from Aware to TQ Delta. The Special Master ordered the production of communications including documents relating to "valuations of the Patents." (D.I. 470, p. 10). The Special Master again relied upon *Delaware Display Group*. In its objections, TQ Delta cites six cases for various propositions, but none of the cases is contrary to *Delaware Display Group*, and none of the cases is more closely aligned with the facts of this case than *Delaware Display Group*. Here, TQ Delta and Aware were sitting on opposite sides of the bargaining table negotiating the sale of a patent portfolio from the one to the other. Their communications with each other before there was an agreement were primarily if not solely for the purpose of getting the most favorable bargain. There was no anticipation that there would be any joint litigation with TQ Delta and Aware sitting on the same side of the "v," and indeed, despite an abundance of litigation, Aware has made no appearance in it. Thus, I believe the Special Master made the right decision. TQ Delta's second objection is **OVERRULED**.

The objections (D.I. 492) are **OVERRULED**. The Special Master's rulings (D.I. 470) to which TQ Delta objects are **ADOPTED**.

IT IS SO ORDERED this 8 day of June 2018.

/s/ Richard G. Andrews
United States District Judge