IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZYXEL COMMUNICATIONS, INC<br>and<br>ZYXEL COMMUNICATIONS<br>CORPORATION,<br><br>    Defendants. | Civil Action No. 1:13-cv-02013-RGA |

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Thomas J. Wimbuscus, Paul W. McAndrews, Anna M. Targowska, James P. Murphy (argued), MCANDREWS, HELD & MALLOY, Chicago, IL,

    Attorneys for Plaintiff

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Yitai Hu, Brianna Ford, ALSTON & BIRD LLP, East Palo Alto, CA; Elizabeth H. Rader (argued), Celine Liu, ALSTON & BIRD LLP, Washington, DC.

    Attorney for Defendants

June 12, 2018

*signature: Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendants' Motion for Expedited Consideration of a Preliminary Injunction (D.I. 390) and related briefing (D.I. 391, 412, 423). The Court heard oral argument on December 19, 2017. (D.I. 458 ("Tr.")).

## I. BACKGROUND

Plaintiff's predecessor, Aware, Inc., helped to develop the DSL standards.[1] (D.I. 391 at 4). In 2012, Aware signed and provided Patent Declarations to the International Telecommunications Union for each relevant DSL standard. (D.I. 28-1, Exh. A). In doing so, Aware committed to grant other parties patent licenses on RAND[2] terms "to make, use and sell implementations of the specified ITU DSL standards."[3] (D.I. 391 at 4-5).

In June 2013, Plaintiff wrote to Defendants[4] regarding its patent portfolio. (D.I. 1 at ¶ 12; D.I. 19 at 46, ¶ 8). Defendants wrote back, expressing interest in a license. (D.I. 1 at ¶¶ 12-17; D.I. 19 at ¶¶ 12-14, 16). The parties never came to an agreement. Defendants allege that the "parties discussed terms for an NDA to allow for informed license negotiations but did not finalize terms of that NDA before [Plaintiff] filed this action." (D.I. 391 at 5 (citing D.I. 1 at ¶¶ 12-17; D.I. 19 at ¶¶ 12-14, 16)). Plaintiff alleges that it "attempted to negotiate in good faith with [Defendants], but [Defendants] did not reciprocate." (D.I. 412 at 1 (citing D.I. 1 at ¶¶ 12-19)).

---

[1] In 2012, Plaintiff purchased the Patents-in-Suit from Aware. (No. 14-954, D.I. 232 at 1; No. 14-954, D.I. 255 at 5-6).

[2] RAND stands for "reasonable and non-discriminatory."

[3] Different standard-setting organizations use different terminology, but the terms "RAND" and "FRAND" mean the same thing. (D.I. 391 at 5, n.8). The parties use "RAND" and "FRAND" interchangeably for purposes of this motion.

[4] The Defendants in this action are ZyXEL Communications, Inc., incorporated in California, and ZyXEL Communications Corporation, registered in Taiwan. (D.I. 7 at ¶¶ 2-3).

In December 2013, Plaintiff filed this patent infringement suit, asserting its portfolio of DSL patents against Defendants. (D.I. 1). Defendants subsequently filed a counterclaim, alleging that Plaintiff breached its obligations to the ITU by failing to conclude a RAND license with Defendants for patents which Plaintiff believes are standard-essential, and instead suing Defendants, seeking a permanent injunction. (D.I. 19; D.I. 391 at 3-4).

In 2017, Plaintiff filed suit in the High Court of Justice in London, England, against ZyXEL UK and ZyXEL Communications A/S (incorporated in Denmark) for infringement of two European patents. (D.I. 394-1). One of these two patents, EU 1,792,430, "is the European counterpart to claims in the Family 5 patents asserted in this action." (D.I. 391 at 6). The other does not correspond to a patent asserted in this action. (D.I. 394-1 at ¶ 3). Plaintiff also seeks a declaration that the terms of an offer it made to the UK and Danish companies on May 26, 2016 are FRAND. (D.I. 391 at 6).[5]

Before Plaintiff filed the UK action, the High Court of Justice issued its main judgment in *Unwired Planet International Ltd. v. Huawei Technology Co. Ltd.*, 2017 EWHC 711 (Pat.) 5 Apr. 2017. (D.I. 391 at 5). The decision provided that there is only one royalty rate that qualifies as FRAND for any given set of standard-essential patents and products, and a patent holder does not breach FRAND obligations by offering a license at higher than FRAND rates unless the rate is "significantly" above the true FRAND rate.[6] (*Id.*). Defendants characterize the decision as "groundbreaking," and accuse Plaintiff of forum shopping. (D.I. 391 at 5; D.I. 423 at 6; Tr. 3:25-4:4).

---

[5] Defendants represent that the High Court of Justice could issue an injunction as soon as January 2019. (Tr. 6:1-5).
[6] Defendants represent that the *Unwired Planet* case is on appeal. (Tr. 16:24-25). Thus, the state of UK FRAND law might well be different by the time the High Court of Justice decides the FRAND issue.

2

Now, Defendants move for Expedited Consideration of a Preliminary Injunction. (D.I. 390). Defendants ask the Court to enjoin Plaintiff from pursuing the UK action. (D.I. 391 at 1).

## II. LEGAL STANDARD

The Third Circuit Court of Appeals has established a test for determining whether an anti-suit injunction should be entered to restrain the advancement of a foreign parallel proceeding. In *General Electric Co. v. Deutz [AG]*, the Third Circuit adopted the restrictive approach, advising the district courts that it would "rarely permit[ ] injunctions against foreign proceedings." [270 F.3d 144, 160-61 (3d Cir. 2001).] Under this restrictive approach, domestic and foreign parallel proceedings may ordinarily proceed simultaneously, "at least until one has reached the stage where its ruling becomes res judicata." [*Id.* at 157.] District courts may appropriately enjoin "foreign parallel proceedings only to protect jurisdiction or an important public policy." [*Id.* at 161.] These exceptions to the ordinary rule against issuing anti-suit injunctions are to be interpreted narrowly. [*See Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 127 (3d Cir. 2002).] Vexatiousness, harassment, or inconvenience to the parties are usually insufficient grounds upon which a court may enjoin a foreign parallel proceeding. [*See Deutz*, 270 F.3d at 161.] Likewise, duplication of issues in the two suits is insufficient to justify an anti-suit injunction. [*Stonington*, 310 F.3d at 127 (discussing *Compagnie dex Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 (3d Cir. 1981)).]

While there has been scant litigation clarifying how the Third Circuit expects district courts to apply the restrictive test set forth in *Deutz,* its decisions have reflected its serious concern for comity, its respect for the sovereignty of other courts, and its faith in the ability of other courts to handle parallel proceedings in a fair and just manner without interference. [*Deutz*, 170 F.3d at 160-61.] Its emphasis on comity is especially significant in the international context. [*See id.* at 160 ("Although [comity] is a consideration in federal and state litigation, it assumes even more significance in international proceedings.").] As the Court noted in *Deutz,* "the proper exercise of comity demonstrates confidence in the foreign court's ability to adjudicate a dispute fairly and efficiently . . . . Failure to accord such deference invites similar disrespect for our judicial proceedings. Reciprocity and cooperation are worthy goals of comity." [*Id.* at 161 (summarizing the Sixth Circuit's discussion of comity in *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992)).] The Third Circuit's adoption of the restrictive approach and its emphasis on comity suggests its desire to avoid sending foreign courts the "'the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility.'" [*See Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 255, 260 (8th Cir. 2007)).] Overall, the Third Circuit's jurisprudence

3

instructs district courts to weigh comity heavily when considering whether an anti-suit injunction should issue.

*Bro-Tech Corporation v. Thermax, Inc.*, 2007 WL 2597618, at *3 (E.D. Pa. Sept. 4, 2007).[7]

## III. DISCUSSION

In applying the foregoing principles to the case before the Court, Judge Rufe further explained,

> Considering the Third Circuit's emphasis on comity and reluctance to interfere with foreign proceedings absent extraordinary or aggravated circumstances, the Court is not convinced that an anti-suit injunction is appropriate in this case. The Third Circuit's dictate in *Deutz* is clear: an injunction restraining the advancement of foreign proceedings should be entered only to protect this Court's jurisdiction or to protect an important public policy. Neither of these rationales supports an anti-suit injunction here-the English action neither threatens to strip the Court of its jurisdiction over the instant action nor endangers an important public policy.
>
> The issue of comity is at the forefront of the Court's analysis. This Court has the utmost confidence in and respect for the High Court's ability to handle the matter before it in the appropriate manner. So long as the High Court is informed of the ongoing nature of the instant litigation . . . the Court has great faith that the High Court will recognize the significance of the . . . [issue] before it, and determine whether it is presently appropriate to act on the motion. As of yet, the judgment has not been obtained in the English proceedings; therefore, under principles of comity outlined in cases such as *Compagnie des Bauxites* and *Deutz,* this Court must allow the High Court to exercise its authority without interference. *See Deutz*, 270 F.3d at 157; *Compagnie des Bauxites*, 651 F.2d at 887.

*Bro-Tech*, 2007 WL 2597618, at *3. The same assessment applies here.

---

[7] Defendants cite to the Ninth Circuit standard for enjoining foreign parallel proceedings throughout their briefs. (*See generally* D.I. 391, 423). However, the Third Circuit has expressly rejected the Ninth Circuit's "lax" standard, stating, "By contrast, the Second, Sixth, and District of Columbia Circuits use a more restrictive approach, rarely permitting injunctions against foreign proceedings. . . . Our Court is among those that resort to the more restrictive standard." *Deutz*, 270 F.3d at 160-61.

4

As a threshold matter, for a court to consider an antisuit injunction, there likely exists a requirement that the action in the enjoining court will be dispositive of the enjoined suit.[8] *See Deutz*, 270 F.3d at 157-58 (adopting "the more restrictive" approach to granting injunctions against foreign proceedings, and citing to *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35-36 (2d Cir. 1987), which holds that "resolution of the case before the enjoining court must be dispositive of the action to be enjoined"); *see also Microsoft Corp. v. Motorola Inc.*, 696 F.3d 872, 881-82 (9th Cir. 2012) (applying the more "lax" standard, and holding, "First, [the court] determine[s] 'whether or not the parties and the issues are the same' in both the domestic and foreign actions, and 'whether or not the first action is dispositive of the action to be enjoined.'"). As Plaintiff notes, Defendants do not argue that this action will be dispositive of the UK action. (Tr. 21:25-22:9; D.I. 412 at 5). Indeed, the UK action involves different patents, one of which does not correspond to any U.S. patent asserted in this action.[9] (D.I. 394 at ¶ 3). Defendants' motion likely fails solely because this action is not dispositive of the UK action.

Regardless, Defendants dispute that the *Bro-Tech* assessment applies here. They argue (1) that the UK action would usurp this Court's jurisdiction, and (2) that the Court must enjoin Plaintiff from pursuing the UK action to protect the "important U.S. policy to effectuate the procompetitive policies of standard setting associations," which holds that seeking injunctive relief is inconsistent with RAND obligations. (D.I. 391 at 1, 8, 12; D.I. 423 at 6).

As to Defendants' first point, Defendants argue that Plaintiff "wants the UK court to decide these [FRAND] issues before this Court can do so," yet "is still eager to avail itself of this Court and its judicial resources to pursue its claims against [Defendants] for infringement of

---

[8] Neither party cites a Third Circuit case, however, articulating such a requirement.
[9] The UK action also involves different defendants, namely ZyXEL Communications UK Limited and ZyXEL Communications A/S. (D.I. 394-1, Exh. 1). I make no determination as to whether those entities are functionally the same as Defendants in this action.

5

numerous U.S. patents." (D.I. 391 at 8). However, I am unconvinced that this Court's jurisdiction is threatened by the UK action. "While it is true that res judicata can be applied to bar relitigation of claims previously decided on the merits, res judicata is . . . not a doctrine which would defeat subject matter jurisdiction . . . ." *Livera v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1190 (3d Cir. 1989); *accord*, *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Accordingly, even if Plaintiff attempted to assert a judgment on the FRAND issue in the UK action as a res judicata bar to any of Defendants' defenses or counterclaims, that would not strip this Court of its jurisdiction over the RAND matter.[10]

Moreover, entry of a judgment on the FRAND issue by the High Court of Justice is uncertain. If Defendants do not infringe the asserted European patents, then the High Court of Justice may not reach the FRAND issue.

Defendants cite *Laker Airways v. Sabena, Belgian Worldwide Airlines*, 731 F.2d 909, 915, 939 (D.C. Cir. 1984), where the D.C. Circuit affirmed an injunction where the foreign defendants had instituted a UK proceeding "solely" to terminate the United States claims. (D.I. 391 at 7-8). The court found that "United States judicial functions ha[d] been usurped, destroying the autonomy of the courts." *Id.* at 939. However, the *Laker* case is distinguishable. (D.I. 412 at 16-17). That case involved defendants filing suit in England "solely" to obtain injunctions preventing US courts from exercising jurisdiction over cases involving US antitrust law violations. *Laker*, 731 F.2d at 918, 938. The *Laker* court explained that "parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in

---

[10] The parties agree that an injunction in the UK directly impacts UK sales only. (Tr. 34:1-8, 38:7-20). Thus, even were the High Court of Justice to reach the FRAND issue, it appears that res judicata would not apply to any injunction it issues.

6

the other." *Id.* at 927-28. Here, Plaintiff has not instituted the UK action "solely" to terminate the United States claims. Rather, in the UK action, Plaintiff asserts at least one European patent that has no U.S. equivalent in this litigation. Accordingly, the circumstances suggest that the UK action should proceed parallel to this action, and do not warrant an injunction.

As to Defendants' second point, there is no "*per se* rule" that standard-essential patent owners are not entitled to injunctions. *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). Therefore, Defendants' argument that some "federal courts [outside of the Third Circuit] have come to the . . . conclusion that seeking injunctive relief against standard implementers is inconsistent with RAND or FRAND obligations" does not indicate the presence of some clear public policy that necessitates enjoining the UK action.[11] (D.I. 391 at 12). Rather, as Plaintiff notes, "there is an ongoing debate in the United States about FRAND policy and allowing injunctions against infringement of [standard-essential patents]." (D.I. 412 at 12). As such, I do not find that the UK action undermines an "important public policy."[12]

---

[11] In *Realtek Semiconductor Corp. v. LSI Corp.*, relied heavily upon by Defendants, the district court enjoined an ITC proceeding, but only after it had already found on summary judgment that the defendants breached a contract with the plaintiff by instigating an ITC proceeding before offering a RAND license. 946 F. Supp. 2d 998, 1005 (N.D. Cal. 2013).

[12] Defendants submitted a notice of additional authority, citing to *Huawei Technologies, Co. v. Samsung Electronics Co.*, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018). There, a district court, applying the "lax" standard of the Ninth Circuit, granted "Samsung's motion to enjoin Huawei from enforcing orders of a Chinese court until the U.S. court had the ability to determine Huawei's breach of contract claims arising out of FRAND obligations." (D.I. 514 at p. 1).

But that court found that "the policy that is undermined is [the] court's ability to determine the propriety of injunctive relief in the first instance," and noted that "[t]he Chinese injunctions would likely force [Samsung] to accept Huawei's licensing terms, before any court has an opportunity to adjudicate the parties' breach of contract claims." *Huawei*, 2018 WL 1784065, at *10. Here, the High Court of Justice would resolve the contract issues on the basis of contract law. (Tr. 24:14-17). Moreover, Defendants do not agree that this Court would be bound by a worldwide FRAND rate found by the High Court of Justice. (Tr. 12:6-17). Accordingly, *Huawei* is distinguishable for multiple reasons.

Because the UK action will not usurp this Court's jurisdiction, or threaten an important public policy, I will deny Defendants' Motion for Expedited Consideration of a Preliminary Injunction (D.I. 390).[13] *See Deutz*, 270 F.3d at 161.

## IV. CONCLUSION

A separate order will be entered.

---

[13] In the alternative, Defendants request that the Court expedite the proceedings. Where a party seeking expedition shows "good cause" such that its request is "reasonable in light of the relevant circumstances," this Court will expedite proceedings. *Kone Corp. v. Thyssenkrupp USA Inc.*, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011). To show good cause, a party must establish a sufficiently colorable claim and a sufficient possibility of a threatened irreparable injury to justify the extra costs. *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2015 WL 9437530, at *5 (D. Del. Dec. 22, 2015). For the same reasons I am denying Defendants' Motion for Expedited Consideration of a Preliminary Injunction, I will deny Defendants' request to expedite the proceedings.